Affirmed and Memorandum Opinion filed November 25, 2008








Affirmed and Memorandum Opinion filed November 25, 2008.

 

 

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-07-00466-CR

____________

 

MATTHEW DAVID HARMS, Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

 



 

On Appeal from the 149th
District Court

Brazoria County, Texas

Trial Court Cause No. 47,981

 



 

M E M O R A N D U M   O P I N I O N

A jury convicted appellant Matthew David Harms of five
counts of aggravated sexual assault of a child and two counts of sexual assault
of a child and sentenced him to confinement for life in the Institutional
Division of the Texas Department of Criminal Justice.  In five issues,
appellant challenges his conviction alleging (1) the evidence is legally and
factually insufficient to support a conviction for count six, (2) the trial
court erred in admitting hearsay evidence, and (3) the trial court erred in
admitting evidence of an extraneous offense.  We affirm.








I.  Factual and Procedural Background

Appellant and Angela Jones Harms were married in 1995. 
Appellant had five children from a previous marriage, J.H., E.H., R.H., D.H.,
and M.H.  Angela had two children from a previous marriage to Joe Stahl, R.S.
and C.S.  Angela had two nieces who occasionally stayed at the Harms=s house, L.J. and
D.S.  Because the record is lengthy and the chronology of events is uncertain,
we will address the evidence by counts in the indictment.

In count one, appellant was charged and convicted with the
aggravated sexual assault of D.S., Angela=s niece.  D.S.
testified that when she was nine years old she was taking a nap at appellant=s house when she
woke up feeling hungry.  She told Angela she was hungry and Angela suggested
they wake appellant.  When appellant woke up, he was naked and Angela began
licking his penis in front of D.S.  Angela then went into the kitchen,
retrieved a bottle of chocolate syrup, poured it on appellant=s penis, and
instructed D.S. to lick the syrup.  Afterward, Angela and appellant told D.S.
not to tell anyone what happened because what happened in their house stayed in
their house.

In counts two, three, and four, appellant was charged and
convicted with the aggravated sexual assault of L.J., Angela=s niece.  L.J.
testified that when she was 12 or 13 years old, appellant made her take off her
clothes and penetrated her vagina with his finger.  On another occasion he put
his mouth on her vagina and forced her to put her mouth on his penis.  L.J.
testified that appellant performed oral sex on her more than once.  On another
occasion, appellant and Angela had sexual intercourse in front of L.J.
explaining that they wanted to demonstrate a certain style of intercourse to
her.  L.J. further testified that she was afraid of appellant and that he told
her if she told anyone about what was happening, he would kill the children and
escape to the mountains where AGod would take him away and he would kill
himself.@








In count five, appellant was charged and convicted with the
aggravated sexual assault of M.H., his biological daughter.  M.H. testified
that when she was 12 or 13 years old, she was visiting appellant and Angela
during the summer break from school.  She was sitting on the couch with her
sister, E.H., when appellant offered her an alcoholic drink.  M.H. sipped some
of the drink, then announced she was going to bed.  Appellant told her she
could sleep in his bed because he would not be going to bed until later.  She
was subsequently awakened by appellant removing her clothes.  She pretended to
be asleep because she was afraid of appellant.  When appellant penetrated her
with his penis, she opened her eyes and saw Angela lying in the same bed facing
away from her.  M.H. testified that she was afraid of appellant, and that he
disciplined all of the children by hitting them with a belt.

In count six, appellant was charged and convicted with the
sexual assault of R.S., Angela=s son.  When R.S. was 15 or 16 years old
appellant encouraged R.S. to have sexual intercourse with his mother while he
watched because it was not against the teachings of the Bible.  R.S. also
testified that in a previous statement he told authorities that appellant
performed oral sex on him, and that D.S. asked if she could perform oral sex on
him.  R.S. further testified that all of the children played strip poker with
appellant and Angela and that during the game, appellant made E.H. lie down and
lift her legs and made J.H. waive his penis while singing a nursery rhyme. 
Appellant further directed L.J. to perform oral sex on R.S.








In count seven, appellant was charged and convicted with
the sexual assault of E.H., his biological daughter.  E.H. testified that she
lived with appellant and Angela for a few years.  One night when she was
asleep, appellant and Angela removed her clothes, and appellant had sexual
intercourse with her.  Angela was also in the bed and rubbed E.H.=s breasts and
stomach and put her hand in E.H.=s hair.  While
E.H. lived with appellant and Angela, appellant had intercourse with her five
or six times.  Angela was in the same room on some, but not all, of those
occasions.  Appellant also penetrated her with his mouth on three or four
occasions, and forced her to perform oral sex on him once.  Angela placed E.H.
on birth control so she would not become pregnant with her father=s child.

Each of the children testified that they were regularly
offered alcohol, marijuana and Ecstasy by appellant and Angela.  They were
afraid of appellant, and were told not to tell anyone about anything that happened
in the house.  Angela admitted that she had sexual intercourse with her son,
R.S., that she performed oral sex on appellant=s son, J.H., that
both she and appellant performed oral sex on R.S., and that she observed
appellant have intercourse with E.H. and oral sex with L.J.  With regard to
count one, Angela=s testimony contradicted D.S.=s testimony in
that Angela testified that D.S. retrieved the chocolate syrup, Angela watched
D.S. pour the syrup on appellant=s penis, and left
the room. 

Several years after these events, L.J. told her mother
about what appellant and Angela had done to her.  Authorities interviewed all
the children and subsequently issued warrants for appellant=s and Angela=s arrests.  Angela
was arrested in May 2004, but appellant had left the county.  Appellant was
arrested four months later on a federal reservation in Crockett, Texas.  Angela
pleaded guilty to two counts of sexual assault of a child and one count of
aggravated sexual assault of a child and accepted an agreed sentence of ten
years.

II.  Issues Presented

In five issues, appellant challenges (1) the legal and
factual sufficiency of the evidence to support the jury=s verdict of
guilty on count six of the indictment, and (2) the admission of certain
evidence.

III.  Legal and Factual Sufficiency

A.      Standard
of Review








When reviewing the legal sufficiency of the evidence, we
examine all of the evidence in the light most favorable to the verdict to
determine whether any rational trier of fact could have found the essential
elements of the offense beyond a reasonable doubt.  Jackson v. Virginia,
443 U.S. 307, 319 (1979).  We consider both direct and circumstantial evidence
and all reasonable inferences that may be drawn therefrom in making our
determination.  See Clayton v. State, 235 S.W.3d 772, 778 (Tex. Crim.
App. 2007).

When reviewing the factual sufficiency of the evidence, we
view all the evidence in a neutral light and set aside the verdict Aonly if it is so
contrary to the overwhelming weight of the evidence as to be clearly wrong and
unjust.@  Cain v. State,
958 S.W.2d 404, 407 (Tex. Crim. App. 1997).  We then ask whether the evidence
supporting the conviction, although legally sufficient, is nevertheless so weak
that the jury=s verdict seems clearly wrong and manifestly unjust,
or  whether, considering conflicting evidence, the jury=s verdict is
against the great weight and preponderance of the evidence.  Watson v. State,
204 S.W.3d 404, 417 (Tex. Crim. App. 2006); Johnson v. State, 23 S.W.3d
1, 11 (Tex. Crim. App. 2000).  We give deference to the jury=s determinations,
particularly those concerning the weight of the evidence and the credibility of
witness testimony.  See Johnson, 23 S.W.3d at 8B9.

B.      Analysis

In count six, appellant was charged with performing oral
sex on Angela=s son, R.S.  A person commits the offense of sexual
assault if he intentionally or knowingly causes the sexual organ of a child to
contact or penetrate the mouth, anus, or sexual organ of another person,
including the actor.  Tex. Penal Code
Ann. ' 22.011 (Vernon Supp. 2008).  Appellant argues the
evidence is legally and factually insufficient because R.S.=s testimony was
equivocal and Angela=s testimony was not credible because she
was an accomplice.  R.S. testified as follows:

Q.      Okay.  And after you finished having sexual
intercourse with your mother, did the Defendant ever touch you?

A.      Not that I recall, but I did say it in my
statement.  To be honest, it=s really fuzzy.








[Prosecutor]: May I approach, Your Honor?

THE COURT: You may.

Q.      Okay.  I=m showing you your statement from January 30th of 2004.  If
you would take a minute and read that for me.

A.      (Witness complies).

Q.      Okay.  Did that refresh your memory?

A.      Somewhat.

Q.      Okay.  Did the Defendant ever touch you?

A.      (Witness nods.)  Yes.  I think so.

Q.      Okay.  And what did he touch you with?

A.      His hand, I guess.

Q.      Okay.  I=m going to direct your attention again to your statement.

A.      Yes, ma=am.  I=m sorry.  I didn=t read that.

(Reading)

Sorry.  I=m trying to find it.

[Prosecutor]: May I approach, Your Honor?

THE COURT: You may.

Q.      (Indicating) Does that refresh your memory?

A.      Well, like I said, it was really fuzzy.

Q.      Okay.  In your statement you stated that
[appellant] wanted to suck my penis.  He started to and I told him I didn=t like it so he stopped.  I went
all the way with my mother.

A.      Yes, ma=am.

Q.      Okay.  And was that true B is that true?

A.      I believe it=s true, yes, ma=am.

Q.      Okay.  And during this time that the
Defendant had his mouth on your penis, did he B did your mother say anything to you during that
time?

A.      Not that I recall.

Q.      Okay.  And how many times did this happen?

A.      Once.

Q.      Just one time?








A.      Yes, ma=am.

 

What weight to give equivocal testimonial evidence is
within the sole province of the jury because it turns on an evaluation of
credibility and demeanor.  Cain, 958 S.W.2d at 408B09.  Thus, a jury
is free to believe or disbelieve all or any part of a witness=s testimony.  A
court of appeals must show deference to such a jury finding. Id. at
409.  This traditional deference extends to a jury=s determination of
what weight to give the testimony of child victims of sexual abuse.  Wallace
v. State, 52 S.W.3d 231, 235 (Tex. App.CEl Paso 2001, no
pet.).  Although somewhat disjointed, R.S.=s testimony
described the abuse in sufficient detail for the jury to find enough evidence
to convict appellant.

Appellant further contends that Angela=s testimony was
not credible because there were self-serving inconsistencies between her
testimony and the testimony of some of the children.  Angela testified that she
and appellant assaulted R.S. by performing oral sex on him.  Angela testified
that appellant Asaid he wanted to know what a woman feels
when she=s giving oral sex.@  She testified
that appellant placed his mouth on the sexual organ of R.S.  The credibility of
Angela=s testimony was a
question for the jury, not for the appellate court.  Cain, 958 S.W.2d at
408B09.  While her
testimony contradicted some of the children=s testimony, it
did not contradict R.S.=s testimony, and the jury was free to
believe or disbelieve her testimony with regard to the assault of R.S.

Viewing the evidence in the light most favorable to the
verdict, we conclude that a rational trier of fact could have found beyond a
reasonable doubt that appellant sexually assaulted R.S.  Further, viewing all
the evidence in a neutral light, we cannot say that the jury=s verdict is so
contrary to the overwhelming weight of the evidence as to be clearly wrong and
unjust.  We overrule appellant=s first and second issues.

 

 








IV.  Admission of Evidence

In his third through fifth issues, appellant challenges the
trial court=s ruling on the admission of evidence.

A.      Standard
of Review

We review the trial court=s admission of
evidence for abuse of discretion.  See Weatherred v. State, 15 S.W.3d
540, 542 (Tex. Crim. App. 2000).  The test for abuse of discretion is not
whether, in the opinion of the reviewing court, the facts present an
appropriate case for the trial court=s action; rather,
it is a question of whether the court acted without reference to any guiding
rules or principles.  Montgomery v. State, 810 S.W.2d 372, 391 (Tex.
Crim. App. 1990).

B.      Hearsay

In his third and fourth issues, appellant contends that the
trial court erred in admitting statements made to doctors by M.H. and E.H.
because the statements were not admissible as outcry statements, nor were they
made for the purpose of medical diagnosis or treatment.

During the testimony of M.H., the State introduced medical
records prepared by the physician who examined her after she reported appellant=s abuse. 
Appellant made the following objection:

I would let the Court know that this exhibit contains a report written
by a Dr. Asriel and various other medical records which contain certain hearsay
information.  I would object to the exhibit being put before the jury with any B with the report of Dr. Asriel by
virtue of the case of B the U.S. Supreme Court case of
Crawford versus Washington, I believe it is, which basically B Your Honor, what I=m alleging is that introducing this
exhibit without calling Dr. Asriel would violate our right to confront and
cross-examine Dr. Asriel; and we would ask that if the Court admits this
particular exhibit, that the report of Dr. Asriel be redacted.

 








The
State responded, arguing the records were admissible under exceptions to the
hearsay rule for business records and for statements made for the purpose of
medical diagnosis or treatment.  Appellant replied that the State=s response
addressed a hearsay objection, Abut what I=m objecting to is
our constitutional B U.S. constitutional right to
cross-examine Dr. Asriel.@

Appellant then clarified his objection:

What I=m specifically objecting to, Your
Honor, is that the exhibit gets to the jury with the doctor B I=m going to presume his name is Asriel.  That=s A-S-R-I-E-L for your benefit. 
That B that the exhibit not be presented
to the jury with Dr. Asriel=s narrative report unless the State intends to call Dr. Asriel as a
witness in this case, which they have listed him on their witness list, Your
Honor, as a potential witness because that would violate my client=s Fifth Amendment constitutional
right to confront and cross-examine Dr. Asriel about this report.

 

After further discussion, the trial court sustained
appellant=s objection to the second page of the records, which
contained the doctor=s impressions because Athere is no way to
cross-examine that.@  The court admitted the first page of the
records, which contained a statement made by M.H. to the doctor stating the
allegation against appellant.

During the testimony of E.H., the State introduced similar
records from the same doctor and appellant relied on his previous objection. 
The trial court remained consistent with its prior ruling and redacted the
portion of the records that contained the doctor=s statements and
impressions.  








As a threshold matter, we must address whether appellant=s complaint was
preserved for our review.  As a prerequisite to presenting a complaint on
appeal, the appellant must make a timely and specific objection to the trial
court.  See Tex. R. App. P. 33.1(a)(1);
In re D.T.C., 30 S.W.3d 43, 48 (Tex. App.CHouston [14th
Dist.] 2000, no pet.).  An objection at trial not comporting with the complaint
on appeal does not preserve error for appellate review.  Dixon v. State,
2 S.W.3d 263, 273 (Tex. Crim. App. 1998).  Instead, an objection must draw the
court=s attention to the
particular complaint raised on appeal.  Tex.
R. App. P. 33.1(a)(1)(A); Little v. State, 758 S.W.2d 551, 564
(Tex. Crim. App. 1988).

The record reflects that appellant=s objection at
trial was directed toward the confrontation clause and whether the doctor=s statements could
be admitted unless the doctor was made available for cross-examination.  The
trial court sustained that objection and redacted the records to remove any
statements by the doctor.  Appellant points out that he mentioned at the
beginning of his objection that the document contained hearsay.  While
appellant stated that the records contained hearsay, it is clear from a reading
of the record that appellant=s objection was based on the confrontation
clause and that the trial court sustained that objection.[1]


The purpose of requiring an objection is to give to the
trial court or the opposing party the opportunity to correct the error or
remove the basis for the objection.  Martinez v. State, 22 S.W.3d 504,
507 (Tex. Crim. App. 2000).  In this case, the trial court sustained appellant=s confrontation
clause objection and redacted the offending portions of the document. 
Appellant cannot now, on appeal, raise a different objection to the same
document.       Moreover, any error in the admission of evidence is generally
rendered harmless when the jury hears similar evidence without objection.  See
Lane v. State, 151 S.W.3d 188, 192B93 (Tex. Crim.
App. 2004).  In State=s Exhibit 5A, Dr. Asriel described M.H.=s report of Aforcible
penile-vaginal intercourse from her father.@  In State=s Exhibit 7A, Dr.
Asriel described E.H.=s report of Apenile vaginal
penetration forced upon her by her father in the spring of 2002.@  The portions of
the records that were admitted before the jury duplicated the testimony of M.H.
and E.H.  Therefore, because the same evidence was admitted without objection,
the error, if any, is harmless.  Appellant=s third and fourth
issues are overruled.








C.      Extraneous
Offenses

In his fifth issue, appellant contends that the trial court
erred in admitting evidence that guns and ammunition were found at the site of
appellant=s arrest.  Prior to the testimony of Agent Gary
McLaughlin, appellant objected to evidence that appellant had been arrested
with firearms in his possession.  

The Houston County Sheriff=s Department
enlisted the help of the United States Forest Service in executing the arrest
warrant for appellant because they had received a tip that he was on a federal
reservation.  Special Agent Gary McLaughlin and Deputy Sheriff Roy May went to
the reservation to execute the warrant.  They posed as dove hunters looking for
a lost dog because they were afraid for their safety.  While approaching the
location where they thought appellant was hiding, they heard what they presumed
was a lever action on a firearm.  Deputy May saw appellant holding a rifle, and
called out to him.  After appellant was arrested, the officers found two rifles
and ammunition in the tent where he had been hiding.

Appellant objected that the testimony about the rifles and
ammunition was inadmissible evidence of an extraneous offense and that its
probative value was outweighed by the danger of unfair prejudice.  The State
argued that the evidence was admissible to show (1) the circumstances
surrounding the arrest and appellant=s consciousness of
guilt, and (2) to justify the children=s fear of
reporting appellant=s abuse.

The State is correct that the circumstances surrounding the
arrest of an accused are generally admissible.  See Couret v. State, 792
S.W.2d 106, 107 (Tex. Crim. App. 1990). However, the general rule is restricted
by the same test as any extraneous matter; that is, the evidence must be
relevant to a material issue in the case and the probative value must outweigh
the prejudicial value.  See Alexander v. State, 88 S.W.3d 772, 777 (Tex.
App.CCorpus Christi
2002, pet. ref=d).  








AEvidence that a criminal suspect armed
himself to prevent capture for the charged offense is certainly relevant to
show consciousness of guilt.@  Meredith v. State, No.
10-05-00434-CR; 2007 WL 1112927, *5 (Tex. App.CWaco 2007, pet.
ref=d) (mem. op.). 
However, before extraneous‑offense evidence can be admitted, it must also
satisfy the balancing test established in Rule of Evidence 403; i.e.,
evidence is admissible if its probative value is not substantially outweighed
by its unfair prejudicial effect.  Tex.
R. Evid. 403.  A proper rule 403 analysis includes, but is not limited
to, the following factors: (1) the probative value of the evidence; (2) the
potential to impress the jury in some irrational, yet indelible, way; (3) the
time needed to develop the evidence, such that the attention of the fact‑finder
is diverted from the indicted offense; and (4) the proponent=s need for the
evidence.  Prible v. State, 175 S.W.3d 724, 733 (Tex. Crim. App. 2005).

In addressing the Rule 403 factors, we note that the
evidence was probative of the children=s fear of
appellant.  Each child explained that he or she did not report appellant=s abuse because of
his or her fear of appellant.  The fact that appellant fled the jurisdiction
into a remote area as he had told several of the children he would do was
probative evidence of the children=s veracity.  As to
the potential to impress the jury in an irrational, yet indelible, way, the
evidence of appellant=s arrest was admitted at the end of a
multi-day trial in which the jury had heard the details of numerous sexual
assaults on several children.  Evidence that appellant possessed firearms and
ammunition at the time of his arrest did not divert the attention of the jury
from the indicted offense in such a way as to cause unfair prejudice. 
Measuring the trial court=s ruling against the relevant criteria by
which a Rule 403 decision is made, we conclude the trial court did not abuse
its discretion in admitting evidence of the circumstances surrounding appellant=s arrest. 
Appellant=s fifth issue is overruled.

 

 








The judgment of the trial court is affirmed.

 

 

 

 

/s/      Eva M. Guzman

Justice

 

 

Judgment rendered
and Memorandum Opinion filed November 25, 2008.

Panel consists of
Chief Justice Hedges and Justices Guzman and Brown.

Do Not Publish C Tex. R. App. P. 47.2(b).

 









[1]  To the extent appellant made a hearsay objection,
the record reflects that he never obtained a ruling on it, but abandoned it in
favor of the confrontation clause.