# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

## NO. 03-16-00684-CR

---

**Jose Louis Villarreal, Appellant**

**v.**

**The State of Texas, Appellee**

---

**FROM THE DISTRICT COURT OF HAYS COUNTY, 274TH JUDICIAL DISTRICT
NO. CR-15-0585, HONORABLE WILLIAM R. HENRY, JUDGE PRESIDING**

---

## M E M O R A N D U M   O P I N I O N

Jose Louis Villarreal was charged with the offense of unlawful possession of a firearm by a felon. *See* Tex. Penal Code § 46.04(a), (e) (setting out elements of offense of unlawful possession of firearm and stating that offense is third-degree felony). The indictment alleged that Villarreal was a felon when he committed the possession offense because he had previously been convicted of the offense of sexual assault of a child. *See id.* § 22.011(a) (describing offense of sexual assault). At the end of the guilt-or-innocence phase of the trial, the jury found Villarreal guilty of the charged offense. Villarreal elected to have the district court assess his punishment. At the end of the punishment phase, the district court imposed a sentence of three years' imprisonment. *See id.* § 12.34 (listing permissible punishment range for third-degree felony). In three issues on appeal, Villarreal contends that the evidence is legally insufficient to support his conviction, that his fundamental rights were violated when the nature of his prior felony conviction was disclosed to the

jury, and that his trial counsel provided ineffective assistance of counsel. We will affirm the district court's judgment of conviction.

**BACKGROUND**

As set out above, Villarreal was charged with the offense of unlawful possession of a firearm by a felon. Villarreal was arrested after his wife, Sarah Villarreal,[1] called the police to report that Villarreal had taken her car and some of her personal items, including her guns. After observing a car matching the description of the one provided by Sarah, Officer John Cope pulled the car over and eventually searched the car. Villarreal's son, T.V., was in the car as a passenger. During the trial, the State called Sarah and Officer Cope to the stand and admitted into evidence a recording of the 911 call that Sarah made and an audio and visual recording taken from Officer Cope's dashboard camera. In addition, during Officer Cope's cross-examination, Villarreal played a portion of an audio recording of a conversation between Officer Cope and Sarah that occurred on the day after the alleged offense in question.

In her testimony, Sarah explained that she owned more than one gun, that Villarreal knew where they were stored in her home because she told him, and that she had previously sold one of her guns to a pawnshop. Further, Sarah testified that she owned more than one car, that she allowed Villarreal to drive one of her cars, and that she usually drove the other car. Regarding the day of the offense, Sarah recalled that after she came home, Villarreal stated that he was leaving her, packed his personal belongings into bags, and asked his son to take the bags to the car that Sarah

---

[1] Because the defendant and his wife share the same surname, we will refer to his wife by her first name.

2

allowed Villarreal to drive. Further, Sarah related that she told Villarreal that she did not want him to take her car, that she would call the police if he drove off in her car, and that he threatened her in response. In her testimony, Sarah explained that she did not see Villarreal or his son take any of her guns to the car. Moreover, Sarah testified that after Villarreal left, she called the police when she discovered that some of her personal property had been taken. In addition, Sarah stated that after the police found Villarreal, she went to the scene and recognized several items that had been recovered from the car, including her guns, and Sarah explained that she did not put the weapons in the car. During Sarah's testimony, an audio recording of her phone 911 call was played for the jury. On the recording, Sarah explained that Villarreal took her car and her guns without her permission.

After Sarah finished her testimony, Officer Cope was called to the stand. In his testimony, Officer Cope explained that when he was interacting with Villarreal after pulling Villarreal over, Villarreal denied on two occasions that there were guns in the car and gave Officer Cope permission to search the vehicle. When describing the search, Officer Cope testified that it looked like someone had packed the car after a hasty move by placing clothing and other items in large plastic bags and also testified that he found four firearms in the trunk. Moreover, Officer Cope stated that after he discovered the guns, Villarreal stated that "his wife put[] them in there, perhaps."

During Officer Cope's testimony, an audio and visual recording taken from Officer Cope's dashboard camera was admitted into evidence and played for the jury. The recording includes audio from a microphone located inside Officer Cope's patrol vehicle. On the recording, Villarreal denied that there were any weapons in the car, related that Sarah said that he could use the car to take his stuff out of her house, and stated after the officers started their search that Sarah helped him pack the car. Moreover, the recording chronicled how after the police found weapons inside the trunk

3

under the garbage bags that had been packed in the car, Villarreal urged that Sarah put the weapons in the trunk and that he had no idea that the weapons were in the car. However, the recording also documented comments that Villarreal made to himself while sitting in the backseat of Officer Cope's patrol car and while watching the officers search the car. In particular, the recording showed that immediately before the officers got near the gym bag in the trunk containing the weapons, Villarreal stated, "oh no" and "fuck it, they found it," and that right after the officers opened the bag and started pulling items out, Villarreal stated, "man, they found them all" and "this is the worst day of my fucking life." During Officer Cope's cross-examination, a portion of an audio recording of a conversation between Officer Cope and Sarah was played for the jury, and although Officer Cope testified that he was unable to understand the contents of that portion of the recording, Villarreal argued that Sarah stated on the recording that Villarreal did not pack the car and instead asked his son to pack the car.

At some point in the trial, the parties entered into a stipulation in which Villarreal agreed that he had previously been convicted of a felony and that the charged offense "is alleged to have occurred before the 5th anniversary of [his] release from confinement" for the prior felony. After the witnesses testified and after both sides presented their closing arguments, the jury found Villarreal guilty of the charged offense. Villarreal appeals the district court's judgment of conviction.

## DISCUSSION

### Sufficiency of the Evidence

In his first issue on appeal, Villarreal contends that the evidence presented at trial was insufficient to show that he "knowingly possessed the firearms found in his wife's car."

4

When reviewing the sufficiency of the evidence, appellate courts view the evidence in the light most favorable to the verdict and determine whether "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). In this type of review, an appellate court must bear in mind that it is the factfinder's duty to weigh the evidence, to resolve conflicts in the testimony, and to make "reasonable inferences from basic facts to ultimate facts." *Id.*; *see also* Tex. Code Crim. Proc. art. 36.13 (explaining that "jury is the exclusive judge of the facts"). Moreover, appellate courts must "determine whether the necessary inferences are reasonable based upon the combined and cumulative force of all the evidence when viewed in the light most favorable to the verdict." *Hooper v. State*, 214 S.W.3d 9, 16-17 (Tex. Crim. App. 2007). Furthermore, appellate courts presume that conflicting inferences were resolved in favor of the conviction and "defer to that determination." *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). In addition, courts must bear in mind that "direct and circumstantial evidence are treated equally" and that "[c]ircumstantial evidence is as probative as direct evidence in establishing the guilt of an actor" and "can be sufficient" on its own "to establish guilt." *Kiffe v. State*, 361 S.W.3d 104, 108 (Tex. App.—Houston [1st Dist.] 2011, pet. ref'd). Moreover, "reviewing courts 'measure the sufficiency of the evidence by the so-called hypothetically correct jury charge, one which accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant is tried.'" *Smith v. State*, 500 S.W.3d 685, 692 (Tex. App.—Austin 2016, no pet.) (quoting *DeLay v. State*, 465 S.W.3d 232, 244 n.48 (Tex. Crim. App. 2014)). The evidence is legally insufficient if "the record contains no evidence, or merely a 'modicum' of evidence, probative of an element of

the offense" or if "the evidence conclusively establishes a reasonable doubt." *Kiffe*, 361 S.W.3d at 107 (quoting *Jackson*, 443 U.S. at 320).

As set out above, Villarreal was charged with unlawful possession of a firearm. Under the Penal Code, a person commits that offense if he "has been convicted of a felony" and "if he possesses a firearm . . . after conviction and before the fifth anniversary of the person's release from confinement following conviction of the felony or the person's release from supervision under community supervision, parole, or mandatory supervision, whichever date is later." Tex. Penal Code § 46.04(a)(1). "'Possession' means actual care, custody, control, or management," *id.* § 1.07(a)(39), and "is a voluntary act if the possessor knowingly obtains or receives the thing possessed or is aware of his control of the thing for a sufficient time to permit him to terminate his control," *id.* § 6.01(b). Accordingly, to establish the offense of unlawful possession by a felon, the State is "required to prove: (1) the accused exercised actual care, control, or custody of the firearm; (2) he was conscious of his connection with it; and (3) he possessed the firearm knowingly or intentionally." *Bates v. State*, 155 S.W.3d 212, 216 (Tex. App.—Dallas 2004, no pet.).

If, as in this case, "'the firearm is not found on the defendant or is not in his exclusive possession, the evidence must affirmatively link him to the firearm.'" *Jones v. State*, 338 S.W.3d 725, 742 (Tex. App.—Houston [1st Dist.] 2011) (quoting *James v. State*, 264 S.W.3d 215, 218-19 (Tex. App.—Houston [1st Dist.] 2008, pet. ref'd)), *aff'd*, 364 S.W.3d 854 (Tex. Crim. App. 2012). "The State may establish possession by proving links which demonstrate that the defendant 'was conscious of his connection with the weapon and knew what it was.'" *Id.* (quoting *James*, 264 S.W.3d at 219). "Factors that may establish an affirmative link include whether":

6

(1) the contraband was in plain view; (2) the defendant was the owner of the car in which the contraband was found; (3) the defendant was the driver of the car in which the contraband was found; (4) the defendant was in close proximity and had ready access to the contraband; (5) the contraband was found on the same side of the car as the defendant; (6) contraband was found on the defendant; (7) the defendant attempted to flee; (8) conduct by the defendant indicated a consciousness of guilt, including extreme nervousness or furtive gestures; (9) the defendant had a special connection or relationship to the contraband; (10) the place where the contraband was found was enclosed; (11) occupants of the automobile gave conflicting statements about relevant matters; and (12) affirmative statements connect the defendant to the contraband, including incriminating statements made by the defendant when arrested.

*James*, 264 S.W.3d at 219. "The number of factors present is not as important as the logical force the factors have in establishing the elements of the offense," and "[t]he absence of various affirmative links does not constitute evidence of innocence to be weighed against the affirmative links present." *Id.*

On appeal, Villarreal does not challenge the stipulation that he had previously been convicted of a felony and that the offense at issue occurred before the fifth anniversary of his release from confinement for the prior offense. Instead, Villarreal argues that the State failed to show that he intentionally or knowingly possessed the firearms "as evidenced by the facts that (1) he was not in exclusive possession of them, (2) there was nothing introduced to affirmatively link him to them to the exclusion of all others, and (3) he exhibited surprise at their discovery." As support for his sufficiency challenge, Villarreal notes that "the guns were not in plain view or conveniently accessible" and that the guns were found underneath the garbage bags that had been packed into the car. In addition, Villarreal highlights testimony from Sarah stating that she did not see Villarreal take the guns. Moreover, Villarreal points to Sarah's testimony stating that she had recently pawned one of her guns and argues, based on that testimony, that Sarah must have "loaded the guns in her

7

car on a prior date." Finally, Villarreal refers to statements that he made to Officer Cope expressing surprise when the guns were found and indicating that Sarah must have placed the guns in the car.

As set out above, the undisputed testimony at trial established that Villarreal was the driver of the car in which the weapons were found and that the weapons were found in the trunk of the car. Moreover, although Sarah testified that Villarreal asked his son to take his bags to the car and although Sarah testified that she did not see Villarreal or his son place the weapons in the car, she denied placing the weapons in the car. In addition, Sarah explained in her testimony that she typically drove her other car and that she allowed Villarreal to drive the car in which the weapons were found. Furthermore, although one of the recordings played for the jury documented statements made by Villarreal denying knowledge that the weapons were in the trunk and asserting that Sarah placed the items in the trunk, that recording also captured statements by Villarreal that he made to himself both before and after the police found the weapons indicating that Villarreal was aware of the fact that the weapons were inside the trunk, that he knew where in the trunk the weapons were stored, and that he knew how many guns were in the trunk.

Given our standard of review and in light of the record before this Court as well as the reasonable inferences that can be made from that record, we must conclude that a rational jury could have concluded that the evidence affirmatively linked Villarreal to the guns in the trunk; that Villarreal was conscious of his connection to the weapons; that Villarreal had "actual care, custody, control, or management" of the firearms; and that Villarreal intentionally or knowingly possessed the firearms by knowingly obtaining or receiving them or by being aware of his control over the firearms "for a sufficient time to permit him to terminate his control." *See* Tex. Penal Code

8

§§ 1.07(a)(39), 6.01(b). Accordingly, we must conclude that the evidence was legally sufficient to support Villarreal's conviction for unlawful possession of a firearm. *See id.* § 46.04(a); *see also Powell v. State*, 112 S.W.3d 642, 645 (Tex. App.—Houston [1st Dist.] 2003, pet. ref'd) (determining that evidence was legally sufficient to support conviction for unlawful possession of firearm where evidence established that weapon was located in trunk of car, that defendant was driver of vehicle in which firearm was found, and that defendant volunteered information about weapon when questioned by police). *Compare Coleman v. State*, 188 S.W.3d 708, 721 (Tex. App.—Tyler 2005, pet. ref'd) (determining that evidence was legally sufficient because evidence showed that defendant "was the sole occupant of the vehicle" and that "several of his personal possessions were found in the trunk along with the firearms"), *and Jones v. State*, No. 01-04-00973-CR, 2005 WL 1309035, at *1, *3 (Tex. App.—Houston [1st Dist.] June 2, 2005, no pet.) (mem. op., not designated for publication) (concluding that evidence was legally sufficient to support defendant's conviction for unlawful possession of firearm even though defendant's girlfriend testified that she bought shotgun and placed it in defendant's car after using it where, among other things, evidence showed that shotgun was found in defendant's trunk and that defendant admitted to having gun "when it was obvious that an officer would inventory the trunk of his car"), *with Harris v. State*, No. 04-16-00681-CR, 2017 WL 3159454, at *7 (Tex. App.—San Antonio July 26, 2017, no pet.) (determining that evidence was legally insufficient to support conviction for unlawful possession of firearm where evidence showed that there was weapon in closed bag near defendant in car that "was driven and owned by someone else").

For all of these reasons, we overrule Villarreal's first issue on appeal.

9

**Prior Offense**

In his second issue on appeal, Villarreal argues that "[t]he State committed misconduct by infusing the trial with the unduly prejudicial and non-relevant detail of [his] prior felony conviction for sexual assault of a child." In particular, Villarreal contends that proving the type of prior felony offense is not statutorily required and that the State is simply required to prove that a prior felony conviction occurred, *see McIlroy v. State*, 188 S.W.3d 789, 793 (Tex. App.—Fort Worth 2006, no pet.) (explaining that "the particular type of prior felony offense committed by the defendant is not relevant; the State is simply required to prove the defendant's status as a felon to satisfy the prior-felony-conviction element of the offense"), and urges that the indictment unnecessarily named the actual prior offense rather than just alleging that he had previously been convicted of a felony, that the State read the language of the indictment to the jury, that the State questioned Sarah regarding an incident in which administrators at her children's school informed her that Villarreal had been flagged as a person needing supervision, and that the State briefly mentioned the incident at the school during its opening statement. Moreover, Villarreal contends that evidence regarding the type of prior offense was irrelevant to the offense at issue and highly prejudicial and constituted impermissible character evidence. *See* Tex. R. Evid. 401-03, 404(b).[2]

---

[2] In his brief, Villarreal notes that in a prior opinion also involving a conviction for unlawful possession of a firearm by a felon, this Court overruled an issue asserting that a trial court improperly denied a defendant's objection raised in response to the State's cross-examination of a witness regarding whether she knew that the defendant was a registered sex offender because this Court determined that "[i]nquiry into the nature of the relationship between the defendant and a witness may be relevant to show potential bias by the witness or challenge the witness's credibility." *See Tapps v. State*, 257 S.W.3d 438, 446-47 (Tex. App.—Austin 2008), *aff'd*, 294 S.W.3d 175 (Tex. Crim. App. 2009). However, Villarreal contends that our prior opinion has no bearing on the facts in the present case because Sarah was the State's witness and because the State was not attempting

Furthermore, Villarreal notes that he did not object to the references to his prior conviction but argues that he was not required to object in order to present his claims on appeal because his fundamental right to the presumption of innocence was infringed on when the State discussed the nature of the prior offense.[3]

---

"to impeach her, to show potential bias by her, or to challenge her credibility." Given our resolution of this issue, we need not address the applicability of that portion of the analysis from *Tapps* to the present case.

[3] When arguing that no objection was required in this case, Villarreal points to language by the court of criminal appeals in which the court explained that it would "not hesitate to reverse a judgment when the prosecutor engages in conduct calculated to deny the accused a fair and impartial trial," *see Johnson v. State*, 604 S.W.2d 128, 135 (Tex. Crim. App. 1980), and Villarreal also points to an opinion by one of our sister courts of appeals subsequently relying on that language to reverse a conviction even though the defendant "failed to obtain a ruling to an objection," *see Young v. State*, 752 S.W.2d 137, 147-48 (Tex. App.—Dallas 1988, pet. ref'd). In light of those cases, Villarreal contends that even though he made no objection during the trial, this Court should sustain his second issue on appeal because the State engaged in conduct calculated to deny him a fair and impartial trial.

We believe that Villarreal's reliance on those cases is misplaced. In *Johnson*, the court of criminal appeals concluded that reversal was not warranted because the record did "not disclose a willful and calculated effort on" the State's part to deny the defendant "a fair and impartial trial," *see* 604 S.W.2d at 135, and we can see nothing in the analysis from *Johnson* that would compel a conclusion that the State's actions in this case would warrant a reversal even in the absence of an objection. Similarly, although the court in *Young* did reverse the conviction even though the defendant failed to obtain a ruling on his objection, 752 S.W.2d at 147-48, the trial conduct at issue in *Young* differs significantly from that in the present case. In *Young*, the State repeatedly presented an improper jury argument in a case involving a charge of unlawful possession of a firearm by a felon when the State presented "to the jury a scenario of hypothetical offenses sought to be committed by appellant at the scene of the arrest and then s[ought] to convict appellant of those offenses." *Id.* at 143. The defendant repeatedly objected to the State's argument but got "diverted" by further comments by the State and failed to obtain a ruling. *Id.* at 144-45, 148. Accordingly, our sister court "reason[ed] that one slip by defense counsel in the heat of the battle necessary to challenge the prosecutor's extended improper tactics should not deny appellant the fair trial to which he is entitled by due process of law." *Id.* at 148. In this case, Villarreal did not object to any of the State's actions that he now complains of on appeal. In any event, even if the analysis from *Young* had any applicability to the current case, we are not bound by the analysis or holding from our sister court.

11

Generally speaking, in order for "a complaint for appellate review" to be preserved, "the record must show that . . . the complaint was made to the trial court by a timely request, objection, or motion" and that "the trial court . . . ruled on the request, objection, or motion, either expressly or implicitly . . . or . . . refused to rule on the request, objection, or motion, and the complaining party objected to the refusal." *See* Tex. R. App. P. 33.1; *see also* Tex. R. Evid. 103(a)(1) (providing that party may only "claim error in a ruling to admit . . . evidence" when "the error affects a substantial right of the party" and when party objects to admission of evidence and "states the specific ground, unless it was apparent from the context"). "Requiring specific objections to the admission of evidence advances the policy interests of preventing and correcting errors made during trial, whereas excusing the need for objections leads to the opposite result." *Fields v. State*, No. 03-06-00106-CR, 2009 WL 638180, at *1 (Tex. App.—Austin Mar. 12, 2009, pet. ref'd) (mem. op., not designated for publication). Accordingly, all "but the most fundamental rights," including many constitutional rights, are waived if they are not pursued during a trial. *See Saldano v. State*, 70 S.W.3d 873, 887 (Tex. Crim. App. 2002). "When discussing what constitutes a fundamental right, the court of criminal appeals has explained that violations of the following types of rights may be addressed for the first time on appeal: rights that the legislature has specified may be pursued without objection; rights that are waivable only, such as the right to an attorney; and rights that are systemic requirements necessary for the administration of justice, such as the need for a court to have jurisdiction over a case before ruling on it." *Fields*, 2009 WL 638180, at *1 (citing *Saldano*, 70 S.W.3d at 887-88).

As an initial matter and to the extent that Villarreal is urging that the admission of evidence pertaining to his prior offense violated the Rules of Evidence, we note that "[t]he improper

12

admission of evidence during trial does not fall into one of the limited categories of errors that may be addressed on appeal without proper objection." *See id.* at *2; *see also Saldano*, 70 S.W.3d at 889 (explaining that failure to object to admission of evidence waives appellate complaints regarding admissibility of that evidence even if "the error may concern a constitutional right of the defendant"); *Love v. State*, No. 13-01-00342-CR, 2002 WL 34230836, at *1 (Tex. App.—Corpus Christi July 3, 2002, pet. ref'd) (mem. op., not designated for publication) (stating that "admission of evidence of extraneous offenses is" not fundamental error and concluding that defendant "waived any complaint as to the admission of the alleged extraneous offenses" by failing to object).  In addition, as set out above, Villarreal agreed to stipulate that he had been convicted of a prior felony offense, and the agreed stipulation stated that Villarreal had previously been convicted "of the felony offense of Sexual Assault of a Child."  One of our sister courts of appeals has determined in a similar case that any error "in permitting the State to read the entire indictment," including "the portion . . . describing the type of prior felony offense committed as the predicate to the offense of felon in possession of a firearm," was waived when the defendant did not object to the agreed stipulation.  *See McDaniel v. State*, No. 05-14-00887-CR, 2015 WL 2153450, at *2, *3 (Tex. App.—Dallas May 7, 2015, no pet.) (mem. op., not designated for publication).

As discussed above, Villarreal contends that he was not required to object to the references to his prior conviction to preserve the issue for appeal because the references violated his fundamental right to the presumption of innocence.  When attempting to support his assertion that a fundamental right was violated in this case, Villarreal points to *Richardson v. State*, 536 S.W.2d 221 (Tex. Crim. App. 1976), and to *Alexander v. State*, 88 S.W.3d 772 (Tex. App.—Corpus Christi 2002,

13

pet. ref'd). In both cases, the reviewing courts were called upon to determine whether the admission of mug shots from prior offenses constituted error. *See Richardson*, 536 S.W.2d at 223; *Alexander*, 88 S.W.3d at 780-82. Although the court of criminal appeals in *Richardson* did refer to the presumption of innocence as a "fundamental right" in its analysis, *see* 536 S.W.2d at 223, neither *Richardson* nor *Alexander* considered whether an objection was required to preserve an error in the admission of a mug shot because the defendants in both cases objected to the admission of the photos, *id.* at 221, 223 (determining that trial court erred by overruling objection to admission of photo); *Alexander*, 88 S.W.3d at 780-82 (concluding that trial court erred by overruling objections to admission of mug shot from extraneous offense under Rules of Evidence). In addition, after the decision in *Richardson*, the court of criminal appeals determined in a later opinion that a defendant "waived any error" regarding the admission of "a mug shot" indicating the commission of an extraneous offense because the defendant "failed to object." *See Smith v. State*, 595 S.W.2d 120, 123 (Tex. Crim. App. 1980); *see also Subia v. State*, No. 11-15-00084-CR, 2017 WL 2292279, at *1 (Tex. App.—Eastland May 25, 2017, no pet.) (mem. op., not designated for publication) (determining that defendant failed to preserve his claim that his "appearance in jail clothes impermissibly infringed upon his presumption of innocence for the commission of the extraneous offenses presented" during punishment phase because "a defendant who does not desire to wear jail attire must timely object"). Accordingly, it is not entirely clear that the characterization of the presumption of innocence given by the court of criminal appeals in *Richardson* obviates a defendant's need to object even under the circumstances present in that case—e.g., the admission of a mug shot before challenging the admission on appeal—much less under the circumstances present in this case. In

14

addition, we have been unable to find any support for the idea that the State's actions in this case violated a right that the legislature has indicated may be pursued on appeal without an objection, a right that is waivable only, or a right that is a systemic requirement necessary for the administration of justice.

Assuming for the sake of argument that violations of the right to the presumption of innocence do not need to be objected to at trial in order to preserve the claim for appellate review, we do not believe that the presumption-of-innocence concerns present in cases pertaining to the admission of a defendant's mug shot are present under the circumstances of this case. Unlike a case pertaining to an offense other than the unlawful possession of a firearm by a felon and in which a defendant's presumption of innocence was unnecessarily affected by the introduction of a mug shot from a prior offense, *see Richardson*, 536 S.W.2d at 221, 223 (determining that admission into evidence of defendant's "'mug shot' . . . taken . . . months before the instant offense was allegedly committed" was error because "it tended to show the commission of an extraneous offense . . . without necessity or justification"), the State was *required* as part of its case in chief to prove that Villarreal had been convicted of a prior felony offense, *see* Tex. Penal Code § 46.04(a). Moreover, although Villarreal ultimately agreed to enter into a stipulation to the fact that he had previously been convicted of a felony, no stipulation had been entered into by the time that the indictment was read to the jury or by the time that the State briefly referenced the incident at Sarah's children's school in its opening statement or questioned Sarah about that incident. Accordingly, we cannot agree with Villarreal's assertion that he was not required to object to the references to the prior conviction in order to challenge the propriety of the State's actions on appeal.

15

For all of these reasons, we conclude that Villarreal failed to preserve for appellate consideration his arguments regarding references to the nature of the prior conviction and, therefore, overrule his second issue on appeal.

**Ineffective Assistance of Counsel**

In his final issue on appeal, Villarreal presents a claim related to his second issue and asserts that his trial counsel was ineffective for failing to "timely object to the unduly prejudicial admission of [his] prior felony conviction for sexual assault of a child." In particular, Villarreal notes that even though the indictment named his specific prior conviction, his "trial counsel failed to seek to quash the indictment as an impermissible back-door admission of extraneous, irrelevant, and unduly prejudicial evidence," and Villarreal also notes that his trial attorney "failed to object to the State's repeated reference to [his] prior conviction[] and failed to seek a limiting instruction in the court's jury charge with respect to the underlying offense." Moreover, Villarreal contends that even if his "trial counsel's 'strategy'" was "to permit the jury to learn that [he] was not only a felon but was also a sex offender, such a strategy could <u>never</u> be considered sound or reasonable." In addition, Villarreal asserts that his trial counsel also failed to object when the State sought to admit into evidence the recording of Officer Cope's interaction with Sarah on the day after the alleged incident in which Sarah discussed threats that Villarreal made to her after the incident. Furthermore, Villarreal argues that the admission of the recording related to an extraneous offense "and could not have benefitted [him] in any way."

To succeed on an ineffectiveness claim, a defendant must overcome the strong presumption that his trial "counsel's conduct falls within the wide range of reasonable professional

16

assistance" and must show that the attorney's "representation fell below an objective standard of reasonableness . . . under prevailing professional norms" and that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 688, 689, 694 (1984). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Nava v. State*, 415 S.W.3d 289, 308 (Tex. Crim. App. 2013). "It will not suffice for Appellant to show 'that the errors had some conceivable effect on the outcome of the proceeding.'" *Perez v. State*, 310 S.W.3d 890, 894 (Tex. Crim. App. 2010) (quoting *Strickland*, 466 U.S. at 693). "Rather, he must show that 'there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt.'" *Id.* (quoting *Strickland*, 466 U.S. at 695). "Any allegation of ineffectiveness must be firmly founded in the record, and the record must affirmatively demonstrate the alleged ineffectiveness." *Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999).

"[A]n appellant's failure to satisfy one prong of the *Strickland* test negates a court's need to consider the other prong." *Garcia v. State*, 57 S.W.3d 436, 440 (Tex. Crim. App. 2001). Evaluations of effectiveness are based on "the totality of the representation." *Frangias v. State*, 450 S.W.3d 125, 136 (Tex. Crim. App. 2013); *see also Davis v. State*, 413 S.W.3d 816, 837 (Tex. App.—Austin 2013, pet. ref'd) (providing that assessment should consider "cumulative effect" of counsel's deficiencies). Furthermore, even though a defendant is not entitled to representation that is error-free, a single error can render the representation ineffective if it "was egregious and had a seriously deleterious impact on the balance of the representation." *Frangias*, 450 S.W.3d at 136.

In general, direct appeals do not provide a useful vehicle for presenting ineffectiveness claims because the record for that type of claim "is generally undeveloped."

17

*Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005); *see also Mallett v. State*, 65 S.W.3d 59, 63 (Tex. Crim. App. 2001) (stating that "[i]n the majority of cases, the record on direct appeal is undeveloped and cannot adequately reflect the motives behind trial counsel's actions"). In addition, before their representation is deemed ineffective, trial attorneys should be afforded the opportunity to explain their actions. *Goodspeed*, 187 S.W.3d at 392 (stating that "counsel's conduct is reviewed with great deference, without the distorting effects of hindsight"). If that opportunity has not been provided, as in this case, an appellate court should not determine that an attorney's performance was ineffective unless the conduct at issue "was so outrageous that no competent attorney would have engaged in it." *See Garcia*, 57 S.W.3d at 440.

In this case, although Villarreal did file a motion for new trial, the motion did not contain any allegation that Villarreal was not provided with effective assistance of counsel, and there is no indication in the record that a hearing on the motion for new trial was held. Accordingly, the record in this case would not seem to be sufficiently developed to analyze this claim. Generally speaking, without record evidence regarding an attorney's strategy, appellate courts "cannot speculate as to whether a valid strategy existed, and thus [an] appellant cannot rebut the strong presumption of reasonable assistance." *See Villalobos v. State*, No. 03-13-00687-CR, 2015 WL 5118369, at *5 (Tex. App.—Austin Aug. 26, 2015, pet. ref'd) (mem. op., not designated for publication). In addition, although it was a brief exchange, Villarreal's trial attorney explained during the trial that he wanted to be able to question Sarah regarding her knowledge of the prior felony offense because the testimony would undermine Sarah's credibility. Moreover, consistent with that strategy, Villarreal's attorney questioned Sarah regarding the delay in time between when

18

she first learned of the possibility that Villarreal might have committed the prior offense through a discussion with administrators at her children's school and when Sarah decided to more fully investigate the matter, and Villarreal's attorney also attempted to undermine Sarah's credibility during his closing argument by referencing the disparity in time between when Sarah learned of the prior offense and when she purportedly decided to end the relationship because of that prior offense. *See Gilbert v. State*, No. 14-02-00727-CR, 2003 WL 22176625, at *3 (Tex. App.—Houston [14th Dist.] Sept. 23, 2003, no pet.) (mem. op., not designated for publication) (explaining that "[f]ailure to object to inadmissible extraneous-offense evidence can constitute a plausible trial strategy" and overruling ineffectiveness challenge where "the record before us suggests that undermining the complainant's credibility was a critical component of trial counsel's strategy"). Furthermore, in an effort to mitigate any potential prejudice stemming from his strategy to question Sarah regarding her knowledge of the prior offense, Villarreal's attorney questioned the jury panel during voir dire regarding any potential bias they might have against someone who has been convicted of the offense of sexual assault of a child and was able to excuse panelists for cause based on their responses. In addition, given the disparity in conduct between the charged offense and the prior conviction, *see Tapps v. State*, 257 S.W.3d 438, 449 (Tex. App.—Austin 2008), *aff'd*, 294 S.W.3d 175 (Tex. Crim. App. 2009) (distinguishing possession-of-a-firearm case in which trial counsel failed to stipulate to prior conviction and did not object to admission of evidence establishing that defendant had previously been convicted of failing to register as sex offender from case in which current charges and prior conviction involved similar conduct), Villarreal's counsel might have not unreasonably "concluded that it would be better for the jury to be aware that the prior conviction[] had" not been

19

for an offense involving a weapon than to allow the jury to potentially be concerned that Villarreal had a history of either illegally using or possessing firearms, *see id.*

Regarding Villareal's trial counsel's alleged failure to object to the admission of the recording of a conversation between Officer Cope and Villarreal, the record demonstrates that the State announced that it intended to offer the recording taken from the dashboard camera in Officer Cope's patrol vehicle on the day of the offense, and Villarreal's attorney stated that he had no objection to the admission of that recording. After the recording of the search of the vehicle was played for the jury, Villarreal's attorney informed the district court in a bench conference that there is an audio recording of a conversation between Sarah and Officer Cope that should not be played for the jury because it is hearsay. In addition, Villarreal's attorney asserted that he was unaware that the recording of the conversation was on the same disc as the recording of the search that had been admitted into evidence. In response, the State acknowledged that there was another recording on the disc but stated that it did not plan on playing that recording for the jury. Moreover, the district court explained that if the admitted exhibit contained more than one recording, all of the recordings could be played for the jury because the exhibit had already been admitted into evidence. At that point, Villarreal's attorney objected to the admission of the recording of the conversation, and the district court overruled the objection.

Following the district court's ruling, the State did not attempt to publish the recording of the conversation to the jury, but Villarreal's trial attorney did publish a portion of the recording when cross-examining Officer Cope. In particular, after questioning Officer Pope about whether Sarah told him that Villarreal did not pack the car and that Villarreal asked his son to pack the car instead and about whether knowing that someone else had packed the car might have changed the

20

manner in which Officer Cope investigated the case, Villarreal's trial attorney played the portion of the recording in which Sarah states that Villarreal did not pack the car and asked his son to pack the car instead.

Shortly after that portion of the recording was played for the jury, Villarreal was called to the stand outside the presence of the jury. During that hearing, Villarreal's trial attorney explained that although the recording had been admitted into evidence, he had an agreement with the State "to not allow" the recording "into the jury room for the jury to hear"; however, Villarreal's trial counsel stated that even after he discussed with Villarreal the potential consequences from allowing the jury to have access to the recording and to listen to the full recording, Villarreal indicated that he wanted the jury to be able to listen to the entire conversation in the jury room. In addition, Villarreal personally explained that he wanted the jury to hear the conversation and that "[a]s long as the truth comes out, that's all that matters." On other portions of the recording, Officer Pope and Sarah discuss threatening statements that Villarreal made to her after the offense in question.

After having unsuccessfully objected to the admission of the recording, Villarreal's trial attorney could have reasonably determined that playing the portion of the recording in which Sarah states that Villareal did not pack the car could potentially have benefitted Villarreal after Officer Pope testified that he did not remember being informed that anyone other than Villarreal packed the car and after Officer Pope had been asked whether knowing that someone other than Villarreal had packed the car would "have influenced [him] in any way in this investigation." In addition, during his closing argument, Villarreal's attorney attempted to undermine Officer Cope's credibility by pointing out that Officer Cope denied ever being told that someone else packed the

21

car and then discussing that portion of the recording. Moreover, the record reveals that Villarreal's trial attorney undertook measures to prevent the jury from being able to listen to the full recording but that the jury was given access to the recording at Villarreal's instruction. *See Posey v. State*, 763 S.W.2d 872, 877 (Tex. App.—Houston [14th Dist.] 1988, pet. ref'd) (explaining that "[t]rial counsel simply complied with his client's wishes and cannot be held accountable for appellant's decisions"); *see also Moore v. Johnson*, 194 F.3d 586, 605-06 (5th Cir. 1999) (explaining in appeal of habeas case asserting ineffective assistance of counsel that defendant "is presumed to be the master of his own defense"), *superseded by statute on other grounds as stated in Hernandez v. Thaler*, 463 Fed. Appx. 349, 356 (5th Cir. 2012).

Finally, turning to Villarreal's assertion that his trial counsel should have requested a limiting instruction in the jury charge regarding the prior conviction, we note that "[t]he defendant's prior felony conviction is an essential, substantive element of the offense of unauthorized possession of a firearm by a felon that the State must prove to obtain a conviction." *See Russel v. State*, 425 S.W.3d 462, 467 (Tex. App.—Houston [1st Dist.] 2012, pet. ref'd). Moreover, Villarreal has referred to no case law, and we have found none, suggesting that a limiting jury instruction is appropriate in these circumstances. *Cf. id.* (stating that court had been unable to find any support for idea that jury be instructed that it "should consider the admitted evidence concerning [a defendant]'s prior felony conviction for jurisdictional purposes only and not as evidence of guilt").

In light of the preceding, we cannot conclude that the alleged failures to act that Villarreal contends constituted ineffective assistance of counsel were so outrageous that no competent attorney would have conducted himself similarly.

Having determined that Villarreal has not shown that his trial attorney provided ineffective assistance of counsel on the grounds alleged above, we need not further address the matter, but we do emphasize that ineffectiveness challenges are considered in light of "the totality of the representation" provided by the attorney. *See Thompson*, 9 S.W.3d at 813; *see also Simmons v. State*, Nos. 03-11-00229—00230-CR, 2012 WL 3629864, at \*4 (Tex. App.—Austin Aug. 22, 2012, pet. ref'd) (mem. op., not designated for publication) (determining that "[t]he critical weakness" in ineffectiveness claim was "its failure to consider the totality of trial counsel's representation"). Moreover, we note that during voir dire, Villarreal's attorney successfully objected to comments made by the State before the jury panel; questioned the panel about any potential biases they might have; discussed the legal concepts of possession, knowledge, and credibility; emphasized how police investigations should proceed; went over the State's burden of establishing a defendant's guilt beyond a reasonable doubt; moved successfully to strike several panelists for cause; and exercised his peremptory strikes. In addition, during the guilt-or-innocence phase of the trial, Villarreal's attorney made an opening statement in which he argued that the guns did not belong to Villarreal, that most of the statements that Villarreal made on the recording of the search indicated that he did not commit the offense, and that the evidence will show that Sarah "is not telling the truth." Moreover, his attorney successfully objected on several occasions to testimony elicited by the State. Importantly, Villarreal's attorney successfully objected to the State's decision to try to admit into evidence text messages allegedly sent by Villarreal to Sarah after the incident in which he threatened her and tried to intimidate her from testifying at the trial. Further, Villarreal's attorney thoroughly cross-examined all of the State's witnesses regarding the offense in question. During his closing

arguments, Villarreal's attorney attacked Sarah's credibility and argued that Sarah was the person who put the guns in the car, that the guns were already in the car before Villarreal packed the car to leave, or that Villarreal's son packed the guns into the car without Villarreal's knowledge. During the sentencing phase, Villarreal's attorney again objected successfully to the admission of the text messages described above, warned Villarreal regarding the potential consequences of testifying during the hearing, urged that the evidence established that Villarreal did not purchase the weapons at issue, and asked the district court to place Villarreal on community supervision. In the absence of additional information, we conclude that the totality of the representation suggests that Villarreal was provided with effective assistance of counsel.

For all of these reasons, we overrule Villarreal's final issue on appeal.

## CONCLUSION

Having overruled all of Villarreal's issues on appeal, we affirm the district court's judgment of conviction.

_____

David Puryear, Justice

Before Justices Puryear, Field, and Bourland

Affirmed

Filed:   December 1, 2017

Do Not Publish