**Adrian ALEXANDER, Appellant,**

**v.**

**The STATE of Texas, Appellee.**

**No. 13–00–00408–CR.**

Court of Appeals of Texas,
Corpus Christi–Edinburg.

Aug. 29, 2002.

Rehearing Overruled Oct. 10, 2002.

**774**

John H. Hagler, Dallas, for Appellant.

Bryan Rutherford, Assistant District Attorney, William T. (Bill) Hill, Jr., District Attorney, Dallas, for Appellee.

Before Chief Justice VALDEZ and Justices DORSEY and HILL.[1]

## OPINION

HILL, Justice (Assigned).

Adrian Alexander appeals his conviction by a jury of the offense of capital murder in which the State did not seek the death penalty. His punishment was assessed at life imprisonment in the Texas Department of Criminal Justice, Institutional Di-

vision, in accordance with Texas Penal Code section 12.31(a). He contends in five issues that the evidence is factually insufficient to support his conviction because the trial testimony established that he was falsely accused of shooting the victim and that the trial court erred by: (1) admitting into evidence the .357 Magnum that was seized at the time of his arrest; (2) admitting into evidence his mug shot that had been taken when he was arrested in 1996 for an extraneous offense; (3) failing to exclude the mug shot because any probative value was substantially outweighed by the danger of unfair prejudice; and (4) failing to charge the jury on the lesser included offense of felony murder. We reverse the judgment and remand for a new trial.

■■■ Alexander contends in his first issue that the evidence is factually insufficient to support his conviction because the trial testimony established that he was falsely accused of shooting the victim. In reviewing the factual sufficiency of the evidence to support a conviction, we are to view all the evidence in a neutral light, favoring neither party. *Johnson v. State*, 23 S.W.3d 1, 7 (Tex.Crim.App.2000); *Clewis v. State*, 922 S.W.2d 126, 129 (Tex. Crim.App.1996). Evidence is factually insufficient if it is so weak as to be clearly wrong and manifestly unjust or the adverse finding is against the great weight and preponderance of the evidence. *Johnson*, 23 S.W.3d at 11. Therefore, we must determine whether a neutral review of all the evidence, both for and against the finding, demonstrates that the proof of guilt is so obviously weak as to undermine confidence in the verdict or the proof of guilt, although adequate if taken alone, is greatly outweighed by contrary proof. *Id.* In

[1]. Retired Justice John Hill assigned to this court by the Chief Justice of the Supreme Court of Texas pursuant to Tex. Gov't Code Ann. § 74.003 (Vernon 1998).

performing this review, we are to give due deference to the fact finder's determinations. *Id.* at 8–9; *Clewis,* 922 S.W.2d at 136. Consequently, we may find the evidence factually insufficient only where necessary to prevent manifest injustice. *Johnson,* 23 S.W.3d at 9, 12; *Cain v. State,* 958 S.W.2d 404, 407 (Tex.Crim.App.1997).

Dr. Jeffry Barnard, the chief medical examiner for Dallas County, presented his autopsy report in which he concluded that the deceased, Tasha Lewis, died as a result of a rifle shot to her head. He indicated that the lack of stippling or gunpowder on the body generally means that the shot was fired from a distance of at least three and a half feet He indicated that death would have been close to instantaneous. He stated that loss of consciousness should have been instantaneous.

Curtis Lewis identified a picture as being that of his daughter Tasha, the deceased. He indicated that at the time of her death his daughter lived with Zachary Fuller on Hatcher Street.

Zachary Fuller confirmed that he was living with the deceased in an apartment on Hatcher Street. He acknowledged that he was a drug dealer who sold crack cocaine and was working on growing marijuana. He said that late in the evening of October 5, 1998, he and Tasha were watching television when there was a knock at the door. Tasha told Fuller that the person knocking was Trey Six. At trial, Fuller identified Alexander as being Trey Six. According to Fuller, Alexander came into the apartment carrying a rifle. He said that Alexander told him and Tasha to get on the floor and asked them where the dope and money was. He related that after he gave Alexander the crack cocaine and money that he had, Alexander said that it was going to get bloody and that he was expecting more than the $25–$30 that Fuller had given him. Fuller said the next thing that happened was that Alexander shot Tasha.

Fuller testified that after Alexander shot Tasha he raised up and Alexander fired a shot at him and missed. He indicated he rushed Alexander and they struggled. He stated that he got the gun from Alexander, opened the door to the apartment, and threw the gun down the stairs. He related that as they were fighting, he was yelling to whoever could hear him to call the police. He said Alexander was wearing a black leather jacket that came off during the fight and was left at the scene. He referred to a neighbor, James, as the guy who grabbed the gun. He said that after Alexander left, he went back upstairs, where Tasha was bleeding but still alive. He indicated that he thought he saw her mouthing to him that she loved him. He testified that he then ran across to a fire station that was located just across the street.

Fuller said he identified the assailant to the police as Trey Six, who had on a red silk suit with a dress shirt and silk slacks, and who had a bunch of gold teeth in his mouth. Alexander showed his teeth to the jury. The record reflects that Alexander has a full upper row of gold teeth. Fuller identified Alexander as the assailant from a photo identification spread. He said the place where the gun was located in police photographs was where James, the neighbor, placed it, not where the gun was dropped. He said it was actually on the concrete porch of the apartment.

Rene Dominguez testified that he was a firearms instructor with the Dallas Police Department who had previously worked in the physical evidence section. He indicated that he could not retrieve either bullet because doing so would cause a lot of damage to the building. He identified a black leather jacket, an M–1 rifle, and other items found at the

scene. He indicated that no latent fingerprints were recovered. He related that he took a handwashing kit from Fuller, which he described as a swabbing of the back and palms of the hand. He stated that the purpose of the handwashing is to determine if the person has recently fired a weapon.

Dorothy Vaughn, a neighbor, testified that she lived downstairs from Fuller with her husband James, three children, and her mother. She said that she was sleeping on the night in question when a struggle on the stairs woke her up. She indicated that it sounded like someone fighting. She said she heard Fuller beating on the door saying to call the police. She said that when she got up her husband James was in the kitchen and she never saw him go outside. She said that she and James had separated and she did not know where he was at the time of trial. She indicated that after she called the police she saw Fuller coming across the street from the fire station. She stated that when she saw the weapon it was lying on the porch

Robert Starnes, a neighbor who lived right across from Fuller, testified that he was watching television when he heard two shots. He then heard wrestling or struggling. He indicated that he heard male voices but could not understand what they were saying. He said he saw the young man who lived next door to him running to the fire station. He stated that he heard Fuller say, "he shot my girl." He testified he did not see James come out and that he never saw a weapon.

Glenn Thomson of the Dallas County Sheriff's Office testified that State's exhibit 46–A was an identical photograph as State's Exhibit 46 that was already in evidence. State's exhibit 46–A was admitted into evidence for purposes of the record only. These exhibits were pictures of a mug shot taken of Alexander in 1996, in which he was wearing a black leather jacket.

Travis Spinder testified that he is a firearm toolmark examiner at the Southwestern Institute of Forensic Science. He indicated that shell casings found at the scene were fired from the rifle found at the scene. Nancy Weber, a chemist at the Institute of Forensic Science, testified that she tested the substance found in the pocket of the leather coat left at the scene and that it was cocaine.

James Adams, a trace evidence analyst for the Dallas Crime Lab, testified that he analyzed the handwipings performed on Fuller. He said that "no antimony, barium and lead levels meeting the criteria that we hold to say that something is positive for gunshot residue were found. . . ." He said this indicated either that Fuller did not discharge a firearm, that he discharged one that does not deposit significant metallic residue on the fire hand, or that he washed or wiped his hands after discharging the weapon. He acknowledged that significant quantities of lead were found on Fuller's hand, but only some barium and no antimony.

We hold that the evidence is factually sufficient to support Alexander's conviction. In arguing that the evidence is factually insufficient, Alexander refers us to several discrepancies between Fuller's trial testimony and the affidavit that he gave to police after the shooting. In his affidavit, Fuller said that he had given Trey Six his beeper number "a couple of days ago," whereas at trial he testified that he gave the number to Trey Joe, an acquaintance whom he said introduced him to Trey Six. In his affidavit, Fuller said that when Trey Six asked him where the dope and money was he told him he did not have any, whereas at trial he testified that he told him he did not have much money. In his

affidavit, Fuller said that he gave Trey Six $25 that he had in his pocket, whereas at trial he said he had thought he had it in his pocket, but that he thought it was on the television. Alexander notes that the statement says nothing about Trey Six having gold teeth.

Alexander also calls to our attention that, although Fuller testified that he was lying on the floor three feet from the deceased at the time of the shooting, the police detective did not notice any blood on him. He also notes that Fuller testified that the deceased was still alive after his struggle with Alexander even though the medical examiner said that her death would have been close to instantaneous. Additionally, Alexander notes that Fuller testified that Alexander was trying to get the gun unjammed so he could fire another shot, whereas the firearm examiner testified that the rifle appeared to be operating properly. Alexander notes that no fingerprint evidence was admitted linking him to the shooting, he was not linked to a ring or keys found at the scene, and he was never asked to try on the leather coat found at the scene. Finally, he notes that there was no explanation for the absence of Trey Joe, who was supposed to have introduced Alexander to Fuller.

■ In conducting our review to determine if the evidence is factually sufficient, we must employ appropriate deference to prevent us, as an appellate court, from substituting our judgment from that of the fact finder. *Johnson,* 23 S.W.3d at 7. Consequently, our conclusion must not substantially intrude upon the fact finder role as the sole judge of the weight and credibility given to witness testimony. *Id.* We have considered all of the matters presented by Alexander and do not agree that they render the evidence factually insufficient. We overrule issue one.

■ Alexander argues in issue two that the trial court erred by admitting into evidence the .357 Magnum revolver that was seized at the time of his arrest. Evidence was presented showing that Alexander was arrested in Bryan, Texas, approximately three weeks after the shooting. Gerald Kinnard, a criminal investigator for the Brazos County Sheriff's Department, testified that at the time of Alexander's arrest officers recovered a .357 Magnum revolver containing several bullets. Alexander was arrested at a residence. There was no showing that the residence belonged to Alexander nor any evidence as to where the revolver was located in the residence. Alexander objected to the admission of the revolver into evidence, as well as testimony concerning it, on the basis of Rules 404(b) and 403 of the Texas Rules of Evidence.

■ The general rule in Texas is that the State is entitled to show circumstances surrounding an arrest. *Maddox v. State,* 682 S.W.2d 563, 564 (Tex.Crim.App.1985). However, when such evidence is inherently prejudicial and has no relevance to any issue in the case, the general rule no longer applies, and the evidence becomes inadmissible. *Id.* We must determine whether the trial judge clearly abused his or her discretion in allowing the evidence to be admitted. *Id.* We fail to see any relevance in the fact that a .357 Magnum revolver was seized somewhere at the residence where Alexander was arrested. Even if relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice. TEX.R. EVID. 403.

■ A Rule 403 balancing test includes the following factors:

(1) how compellingly the extraneous offense evidence serves to make a fact of consequence more or less probable—a factor that is related to the strength of

the evidence presented by the proponent to show the defendant in fact committed the extraneous offense;

(2) the potential the other offense evidence has to impress the jury in some irrational but nevertheless indelible way;

(3) the time the proponent will need to develop the evidence during which the jury will be distracted from consideration of the indicted offense;

(4) the force of the proponent's need for this evidence to prove a fact of consequence, i.e. does the proponent have other probative evidence available to him to help establish this fact, and is this fact related to an issue in dispute.

*Wyatt v. State*, 23 S.W.3d 18, 26 (Tex. Crim.App.2000)

With respect to the first factor, the weapon does not compellingly serve to make a fact of consequence more or less probable. It had nothing to do with any fact of consequence, but merely showed that police seized the weapon somewhere at the residence where Alexander was arrested. The State did not show that Alexander had committed an extraneous offense, only that a weapon was seized at the residence when he was arrested. As to the second factor, admission of the loaded weapon had the potential to impress the jury in an irrational but nevertheless indelible way. The State did not spend a great deal of time proving up the seizure of the weapon, so that there was no great distraction in the jury's consideration of the indicted case. With respect to the fourth issue, the State had no need for presenting evidence of the weapon to prove any fact of consequence.

Considering the four factors, we note that evidence of the seizure of the .357 Magnum had no probative value with respect to any fact of consequence, whereas the danger of unfair prejudice was great. We therefore hold that the trial court abused its discretion by admitting the weapon into evidence. *See Cunningham v. State*, 500 S.W.2d 820, 824 (Tex.Crim. App.1973).

The State urges that the evidence was properly admitted as background contextual evidence. It relies upon the cases of *Mayes v. State*, 816 S.W.2d 79, 86 (Tex. Crim.App.1991) and *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex.Crim.App.1990). Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. Tex.R. Evid 404(b). It may however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. *Id.* Inasmuch as the weapon in this case is not admissible on any of those bases, the State, relying on *Mayes*, argues that admission of the weapon constitutes background evidence and that the Texas Court of Criminal Appeals has held that such evidence is an "other purpose" and an exception to Rule 404(b). Actually, the Court held that the purpose of its discussion was to assess that proposition. *Mayes*, 816 S.W.2d at 86. After discussing the issue, the Court actually held that background evidence in conflict with the proscription of Rule 404(b) is not admissible as one of the alternative purposes in which such evidence may be introduced under Rule 404(b). *Id.* at 88. The State never urges that the evidence's probative value is not substantially outweighed by the danger of unfair prejudice.

██ Having found error, we must conduct a harm analysis to determine whether the error calls for reversal of the judgment. Tex.R.App. P. 44.2. If the error is constitutional, we apply rule 44.2(a) and reverse unless we determine beyond a reasonable doubt that the error did not con-

tribute to appellant's conviction or punishment. Tex.R.App. P. 44.2(a). Otherwise, we apply rule 44.2(b) and disregard the error if it does not affect the appellant's substantial rights. *See Mosley v. State,* 983 S.W.2d 249, 259 (Tex.Crim.App.1998) (op. on reh'g), *cert. denied,* 526 U.S. 1070, 119 S.Ct.1466, 143 L.Ed.2d 550 (1999); *Coggeshall v. State,* 961 S.W.2d 639, 642–43 (Tex.App.-Fort Worth 1998, pet. ref'd) (en banc).

■■■■ Because we determine that the error is not constitutional, rule 44.2(b) is applicable. Therefore, we are to disregard the error unless it affected appellant's substantial rights. Tex.R.App. P. 44.2(b). A substantial right is affected when the error had a substantial and injurious effect or influence on the jury's verdict. *King v. State,* 953 S.W.2d 266, 271 (Tex.Crim.App. 1997) (citing *Kotteakos v. United States,* 328 U.S. 750, 776, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946)); *Coggeshall,* 961 S.W.2d at 643. In making this determination, we review the record as a whole. *Kotteakos,* 328 U.S. at 764–65, 66 S.Ct. 1239. Neither the appellant nor the State must demonstrate harm when an error has occurred; it is the appellate court's duty to assess harm after a proper review of the record. *Johnson v. State,* 43 S.W.3d 1, 4–5 (Tex. Crim.App.2001). The only evidence connecting Alexander to this offense is his identification by Fuller, an acknowledged cocaine and would-be marijuana dealer, as the man he identified to police as Trey Six. The State indicates his identification was corroborated by the fact Alexander has gold teeth, but it was Fuller who indicated at trial that the assailant had gold teeth. Fuller had previously met Alexander and presumably knew he had gold teeth. At trial, the prosecutor argued to the jury,

Last but not least, October 28th of 1998. The sheriff's deputy from Brazos County down in Bryan–College Station made the arrest of Adrian Alexander on this warrant, hiding in the back room of an apartment with a .357 Magnum. Now you can infer from that that he was on the run. And evidence of flight can be taken as evidence of guilt. This man was on the run.

. . . .

The reason he had this, the .357 Magnum, because he left this behind two weeks earlier at the killing.

Having considered the entire record, we hold that evidence concerning the pistol had a substantial and injurious effect on the jury's verdict because the picture it painted of Alexander as an armed fugitive would have caused the jury to give greater credence to Fuller's identification than it might otherwise have done. The State argues that we must hold that the error did not affect Alexander's substantial rights because of the volume of uncontradicted evidence demonstrating Alexander's guilt. However, as we have noted, the only evidence demonstrating Alexander's guilt is his identification by Fuller. The State relies upon the cases of *Matthews v. State,* 979 S.W.2d 720, 723 (Tex.App.-Eastland 1998, no pet.) and *Garza v. State,* 963 S.W.2d 926, 929 (Tex.App.-San Antonio 1998, no pet.). We find both cases to be distinguishable.

In *Matthews,* the defendant was accused of injury to a child. During the trial, a teacher was allowed to testify concerning an incident at school in which the defendant walked across the room and hit another student with a stool. The court held that the admission of testimony concerning the incident was inadmissible, but that it was harmless because it did not have a substantial and injurious effect on the jury's verdict. *Matthews,* 979 S.W.2d at 723. In reaching this holding, the court noted that the same teacher who told of

the incident also testified Matthews was a non-violent person; a character witness testified that he was aware of the stool incident and that it was something the appellant had to do; the jury acquitted Matthews of intentionally causing his daughter's injuries, finding that he recklessly caused them; Matthews was alone with the child when the child was injured; the child suffered a complex fracture to the left side of the skull, a simple fracture to the right side of the skull, swelling on both sides of the head and on the forehead; contusions within the brain, and a subdural hemorrhage; and expert witnesses testified that the injuries were not the result of an accident but were caused by tremendous force, noting that they could not have been caused by falling off a couch onto indoor/outdoor carpet. *Id.* Unlike the testimony in *Matthews*, the only testimony establishing Alexander's guilt in the case at bar is identification by one witness of questionable character. We agree with the holding in *Matthews* and do not find it to be inconsistent with our holding.

In *Garza*, the defendant was charged with robbery in connection with the theft of a car. *Garza*, 963 S.W.2d at 927. On appeal, the court held that evidence that Garza had burned the car was inadmissible. *Id.* at 928–29. While the prosecutor in that case also made a reference to the burning of the car, the court held that the State's three eyewitnesses made it unlikely that the prosecutor's comment or the photographs had any effect on the jury's verdict. *Id.* at 932. As we have previously noted, in this case the only evidence showing Alexander's guilt was his identification by Fuller. We sustain issue two.

■■■ Alexander argues in issue three that the trial court erred by admitting into evidence a mug shot that had been taken when he was arrested in 1996 for an extraneous offense, while in issue four he ar-

gues that the trial court erred by failing to exclude the mug shot because any probative value of the exhibit was substantially outweighed by the danger of unfair prejudice. The apparent purpose for which the mug shot was admitted was to show that nearly two years prior to the murder Alexander owned a black leather jacket. Alexander objected to the admission of the photograph on the basis that it was highly prejudicial and that its prejudicial value would outweigh any probative effect. He specifically relied on Rules 404(b) and 403 of the Texas Rules of Evidence.

As we have previously noted, Rule 403 provides that, although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice. TEX.R. EVID. 403. The mug shot photograph had nothing to do with any fact of consequence, merely showing that nearly two years before the commission of the murder that Alexander had a black leather jacket, without any showing that it was the same leather jacket left by the assailant in this case. The State did not show that Alexander had committed an extraneous offense, only that he had been arrested for one. As to the second *Wyatt* factor, admission of the mug shot resulted in showing the jury that Alexander had been arrested on more than one previous occasion, which in our opinion had the potential to impress the jury in an irrational but nevertheless indelible way. The State did not spend a great deal of time proving up the mug shot, so that there was no great distraction in the jury's consideration of the indicted case. With respect to the fourth factor, the issue as to the identity of the assailant was certainly in dispute. In proving that fact the State had available only the identification by Fuller, a person shown to be of questionable character. The mug shot had little probative value because it only showed the

top portion of the black leather jacket Alexander was wearing in the photograph so that it would have been impossible to make any meaningful comparison to the jacket left by the assailant in this case. The State makes no contention that there is anything unique about the jacket left behind that would enable the jury to reasonably determine from the photograph that Alexander was wearing the same jacket. In fact, the jacket appears similar to black leather jackets worn by any number of people in the community.

■ The State argues that this mug shot photograph was included in the photographic lineup in which Fuller identified Alexander, but a comparison between the mug shot introduced with the photographic lineup shows that the mug shot introduced was not a part of that lineup. While the photograph had little probative value, its prejudicial value is great because it is obviously a mug shot, even with certain information redacted, showing that Alexander had previously been arrested. We therefore conclude that the trial court clearly abused its discretion by admitting the mug shot into evidence. We must therefore make a harm analysis in the manner we have previously discussed. We have already noted the nature of the identification testimony that serves as the only indication that this offense was committed by Alexander. Evidence was presented showing that Fuller identified Alexander from a photographic lineup that included an earlier mug shot of Alexander. Although objection was made to that exhibit at trial, Alexander makes no complaint of its admission in this appeal. In closing argument, the prosecutor argued,

> Another coincidence that when you look at that photograph of Adrian Alexander back on December 4th of 1996, just 22 months before this case, he's wearing a leather jacket. I don't know

about you, but you can take this leather coat and look at that photograph and it's the spitting image of what he's wearing. It's got the raglan sleeves. Is that just another coincidence in the case?

Based upon the entire record, we conclude that the trial court's error in admitting this evidence had a substantial and injurious effect on the jury's verdict because the picture it painted of Alexander as someone who had been arrested at least twice before and who was the owner of the black leather jacket left at the scene would have caused the jury to give greater credence to Fuller's identification than it might otherwise have done.

The State suggests that Alexander had a burden to show that the error affected his substantial rights, but, as we have noted, neither party has any burden with respect to this court's harm analysis. *Johnson,* 43 S.W.3d at 4–5. The State also suggests that the effect would have been slight because it did not show the nature of the prior offense for which Alexander had been arrested. Given that fact, the jury would have been free to speculate that the arrest was for anything ranging from driving while intoxicated to capital murder. Even if the State is correct in arguing that the showing of an unidentified prior arrest would only have a slight effect on the jury's verdict, in this case there was a mug shot of another incident of an unidentified arrest in evidence, thereby showing the jury that Alexander had been arrested for unidentified offenses at least twice previously. We feel that the State would be hard pressed to argue that a showing of two prior unidentified arrests would not have a significant effect on the jury's verdict.

The State maintains that Alexander was required to show that the mug shot impressed the jury "in some irrational but nevertheless indelible way," citing *Wyatt,*

23 S.W.3d at 26. In fact, *Wyatt* does not require that the appellant must show that the admission of the evidence impressed the jury "in some irrational but nevertheless indelible way," but only states that a showing of the potential that the evidence would make such an impression is a factor for the court to consider in applying the balancing test used in the application of Rule 403. Additionally, in arguing that the redaction of any indication that the mug shot was a police photograph rendered it admissible or, at least, rendered its admission harmless, the State relies on *Huerta v. State*, 390 S.W.2d 770, 772 (Tex. Crim.App.1965). We find that case to be distinguishable. The court in *Huerta* held that the trial court did not err in admitting a photograph of Huerta which had all identification marks removed, noting that, as far as the jury was concerned, the picture might have been taken in a penny arcade. *Id.* We have examined the redacted mug shot introduced in this case and are unable to determine that a jury might reasonably conclude that it might have been taken in a penny arcade, because, even with the redactions, it appears only to be what it is, a mug shot. We sustain issues three and four.

In view of our determination of these four issues, we need not consider issue five. We reverse the judgment and remand for a new trial.