

## Fourth Court of Appeals
### San Antonio, Texas

## MEMORANDUM OPINION

No. 04-22-00401-CR

David **HINOJOSA**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 290th Judicial District Court, Bexar County, Texas
Trial Court No. 2018CR0444
Honorable Jennifer Peña, Judge Presiding

Opinion by:     Patricia O. Alvarez, Justice

Sitting:          Patricia O. Alvarez, Justice
                  Luz Elena D. Chapa, Justice
                  Liza A. Rodriguez, Justice

Delivered and Filed: January 10, 2024

AFFIRMED

Appellant David Hinojosa appeals from a murder conviction, arguing that the trial court abused its discretion when it (1) denied his motion for mistrial after the prosecutor "struck over counsel's shoulder" during closing arguments and (2) admitted a mug shot for identification purposes. For the following reasons, we affirm the trial court's judgment.

## BACKGROUND

Hinojosa was charged with murder after he shot and killed Joseph Torres at the Sugartime Lounge. Hinojosa argued self-defense; but he was convicted by a jury and sentenced to thirty years' confinement in the Texas Department of Criminal Justice—Institutional Division.

At trial, the prosecutor offered a mug shot of Hinojosa for identification purposes. The mug shot was used by Detective Duke when he investigated this murder case. He showed it to Witnesses Joshua Garza and Laura McGill soon after the shooting, and they both signed a copy of the mug shot, confirming that they recognized it to be a photograph of Hinojosa. Hinojosa objected to the mug shot being introduced at trial as cumulative and suggestive of other bad acts. The trial court overruled the objection and admitted the exhibit.

During closing arguments, the prosecutor alleged that Defense Counsel lied to the jury about what the surveillance video of the shooting showed. Hinojosa objected to the statement and requested a mistrial. The trial court sustained the objection and asked the jury to disregard the comment, but it denied the request for a mistrial.

Hinojosa appeals, and we consider his two issues: (1) whether the trial court improperly denied his motion for mistrial during the State's closing argument, and (2) whether the trial court abused its discretion when it admitted his mug shot for identification after his counsel admitted Hinojosa was the shooter and an eyewitness confirmed it. We address each issue in turn.

### MOTION FOR MISTRIAL BASED ON IMPROPER ARGUMENT

#### A.     Parties' Arguments

Hinojosa argues that the trial court reversibly erred in denying his request for a mistrial after the prosecutor alleged that Defense Counsel lied during closing argument. The State argues that the trial court remedied the comment, and Hinojosa did not suffer reversible harm as a result.

**B.    Standard of Review**

We review a trial court's denial of a motion for mistrial under an abuse of discretion standard. *See Ladd v. State*, 3 S.W.3d 547, 567 (Tex. Crim. App. 1999) (citing *State v. Gonzalez*, 855 S.W.2d 692, 696 (Tex. Crim. App. 1993)).

**C.    Law**

"When the trial court sustains an objection [to an improper argument by the State] and instructs the jury to disregard but denies a defendant's motion for a mistrial, the issue is whether the trial court erred in denying the mistrial." *Faulkner v. State*, 940 S.W.2d 308, 312 (Tex. App.—Fort Worth 1997, pet. ref'd) (citing *Sauceda v. State*, 859 S.W.2d 469, 474 (Tex. App.—Dallas 1993, pet. ref'd)). The answer depends first on whether the State's argument was improper. *See Hawkins v. State*, 135 S.W.3d 72, 81 (Tex. Crim. App. 2004).

To determine whether an argument is improper, we consider whether the objected-to argument falls within one of four permissible areas. *Id.* at 80. The four permissible areas are: "(1) summation of the evidence; (2) reasonable deduction from the evidence; (3) an answer to the argument of opposing counsel; or (4) a plea for law enforcement." *Davis v. State*, 329 S.W.3d 798, 821 (Tex. Crim. App. 2010).

An argument that "strikes at a defendant over the shoulders of defense counsel"[1] falls outside the permissible areas for proper argument. *Id*. (citing *Wilson v. State*, 7 S.W.3d 136, 147 (Tex. Crim. App. 1999)); *Dinkins v. State*, 894 S.W.2d 330, 357 (Tex. Crim. App. 1995)).

---

[1] For a prosecutor to "strike over the shoulders of defense counsel" means that he has made "uninvited and unsubstantiated accusations of improper conduct directed toward a defendant's attorney, in an attempt to prejudice the jury against the defendant." *Whitney v. State*, 396 S.W.3d 696, 704 (Tex. App.—Fort Worth 2013, pet. ref'd). (citing *Phillips v. State*, 130 S.W.3d 343, 355 (Tex. App.—Houston [14th Dist.] 2004, pet. ref'd) (op. on reh'g), *aff'd*, 193 S.W.3d 904 (Tex. Crim. App. 2006)).

Therefore, if the State "strikes at a defendant over the shoulders of defense counsel," for example, by arguing that defense counsel has lied to the jury, then improper argument has occurred, and the appellate court must determine whether (1) the improper argument was curable, (2) the trial court employed curative measures, and (3) there is no reasonable possibility that the argument contributed to the jury's verdict. *See Jackson v. State*, 927 S.W.2d 740, 744 (Tex. App.—Texarkana 1996, no pet.) (citing *Clarke v. State*, 785 S.W.2d 860 (Tex. App.—Fort Worth 1990), *aff'd*, 811 S.W.2d 99 (Tex. Crim. App. 1991)).

In general, a trial court's swift and simple instructions to disregard have been accepted as appropriate and effective curative measures. *Hawkins v. State*, 135 S.W.3d 72, 84–85 (Tex. Crim. App. 2004); *Williams v. State*, 417 S.W.3d 162, 172–73 (Tex. App.—Houston [1st Dist.] 2013, pet. ref'd); *Faulkner v. State*, 940 S.W.2d 308, 315 (Tex. App.—Fort Worth 1997, pet. ref'd); *Jackson v. State*, 927 S.W.2d 740, 744 (Tex. App.—Texarkana 1996, no pet.). The areas that demand the most scrutiny are factors 1 and 3 concerning the nature (whether extremely inflammatory, offensive, or flagrant) and effect (whether indelible and incurable) of the State's improper argument. *See, e.g.*, *Griffin v. State*, 571 S.W.3d 404, 418–20 (Tex. App.—Houston [1st Dist.] 2019, pet. ref'd). For example, the Court of Criminal Appeals in *Gomez v. State* identified an argument that defense counsel was paid to manufacture evidence to be incurably inflammatory. *See Gomez v. State*, 704 S.W.2d 770, 772 (Tex. Crim. App. 1985). In that case, the trial court erred by denying the defendant's motion for mistrial. *See id*. But most improper arguments are considered curable by a trial court's swift and simple instruction to disregard. *See Hawkins*, 135 S.W.3d at 84–85; *Williams*, 417 S.W.3d at 172–73; *Faulkner*, 940 S.W.2d at 315; *Jackson*, 927 S.W.2d at 744.

**D.     Analysis**

Here, the prosecutor disputed Hinojosa's characterization of the surveillance video that recorded the shooting, stating, "Now I also want to talk to you about what defense got up here and told you, lied to you about, this timing, 19:47:05."[2] Hinojosa objected to this statement and moved for a mistrial.  The trial court sustained the objection and instructed the jury to disregard the statement, but it denied Hinojosa's motion for mistrial.

In determining whether the prosecutor made an improper argument, we note that referring to Defense Counsel's argument as a lie falls outside the permissible areas of argument.  *See Davis*, 329 S.W.3d at 821.  We conclude that the prosecutor made an improper argument, and we consider its nature and effect.  *See id.*

*1.     Curable*

First, we consider whether the prosecutor's comment was curable.  *See Jackson*, 927 S.W.2d at 744.  The evidence shows that it was curable because the jury was able to watch the disputed video for themselves and evaluate the portion that counsel disagreed about.  Furthermore, the prosecutor did not repeat or insist that Defense Counsel lied.  *See Williams*, 417 S.W.3d at 177. On this record, we conclude that the prosecutor's comment was not so egregious as to overcome the presumption that the jury would follow the trial court's instruction to disregard.  *See Griffin*, 571 S.W.3d at 419.

*2.     Curative Measures*

Next, in considering whether the trial court employed curative measures, we conclude that it did when it sustained Defense Counsel's objection to the comment and directed the jury to disregard it:

---

[2] Referring to a timestamp in the Sugartime Lounge's surveillance video.

> THE COURT: Ladies and gentlemen, what the attorneys say is not evidence. You will get your evidence from the testimony from the witness stand.
>
> DEFENSE COUNSEL: And I ask for a ruling on the objection.
>
> THE COURT: Sustained. Continue.
>
> DEFENSE COUNSEL: Can I have an instruction to disregard counsel's last statement?
>
> THE COURT: You can disregard the last statement.

*See Hawkins*, 135 S.W.3d at 84–85; *Williams*, 417 S.W.3d at 172–73; *Faulkner*, 940 S.W.2d at 315; *Jackson*, 927 S.W.2d at 744.

Ideally, the trial court would state more affirmatively that the jury should, must, or will disregard the prosecutor's improper argument. *See Hawkins*, 135 S.W.3d at 84–85; *Williams*, 417 S.W.3d at 172–73; *Faulkner*, 940 S.W.2d at 315; *Jackson*, 927 S.W.2d at 744. Here, we consider that the trial court also instructed the jury not to consider the attorneys' statements as evidence. *See Hawkins*, 135 S.W.3d at 84. As noted above, this court's review casts the most critical eye on the force and effect of the prosecutor's argument that warranted an instruction to disregard. *See Griffin*, 571 S.W.3d at 419.

### 3. Effect on Verdict

Finally, we consider whether there is no reasonable possibility that the argument contributed to the jury's verdict. *See Jackson*, 927 S.W.2d at 744. We conclude that there was not because the video at issue was available to the jury as an exhibit for their review during deliberation to decide what characterization best fit the evidence. *See Griffin*, 571 S.W.3d at 420. Accordingly, denying a mistrial was proper. *See Ladd*, 3 S.W.3d at 567. Hinojosa's first point of error is overruled.

**ADMISSIBILITY OF MUG SHOT**

**A.      Parties' Arguments**

Hinojosa argues that his mug shot from a previous arrest should not have been admitted because it was impermissibly suggestive of other bad acts.  The State argues that Hinojosa's trial objection was not specific enough to preserve error, the prejudicial effect of the admitted photograph did not substantially outweigh the probative value of the photo, and any error from the admission of the mug shot was harmless in light of the record.

**B.      Standard of Review**

The standard of review for the admissibility of evidence is well-known and succinctly stated in *Gigliobianco v. State*, 179 S.W.3d 136, 140 (Tex. App.—San Antonio 2005):

> A trial court's ruling on the admissibility of evidence is reviewed under an abuse of discretion standard.  The test for whether a trial court abused its discretion is whether the action was arbitrary or unreasonable.  An appellate court should not reverse a trial judge whose ruling was within the zone of reasonable disagreement.

*Id*. (internal citations omitted).

**C.      Law**

The admission of a mug shot is not necessarily unfairly prejudicial.  *Hajjar v. State*, 176 S.W.3d 554 (Tex. App.—Houston [1st Dist.] 2004); *Wood v. State*, 18 S.W.3d 642 (Tex. Crim. App. 2001).  In fact, a mug shot can carry significant probative value, for example, when it is used properly in an out-of-court identification and establishes the witness's ability to identify the defendant immediately following the criminal incident and not just in the courtroom.  *Striblin v. State*, No. 04-17-00826-CR, 2019 WL 1049233, at *3 (Tex. App.—San Antonio Mar. 6, 2019, pet. ref'd) (mem. op., not designated for publication); *cf. Boyd v. State*, 472 S.W.2d 125, 127 (Tex. Crim. App. 1971) (condemning practice of showing single photograph to prosecuting witness as impermissibly suggestive).  But under Rule 403, a mug shot may be impermissibly suggestive if

it provides prejudicial evidence of an extraneous offense. *Cervantes v. State*, No. 13-17-00157-CR, 2018 WL 6055439, at *7 (Tex. App.—Corpus Christi–Edinburg Nov. 20, 2018, no pet.) (mem. op., not designated for publication) (citing *Araiza v. State*, 929 S.W.2d 552 (Tex. App.—San Antonio 1996); *Richardson v. State*, 536 S.W.2d 221 (Tex. Crim. App. 1976)).

As this court stated in *Araiza v. State*:

> The admissibility of mug shots is a question of degree. At one end of the spectrum, it is clear that when the photograph itself establishes that it was taken by the police in the context of a particular case, the photograph is inadmissible in the guilt/innocence phase because "it tend[s] to show the commission of an extraneous offense and, therefore, to infringe [the defendant's] fundamental right to the presumption of innocence . . . ." *Richardson v. State*, 536 S.W.2d 221, 223 (Tex. Crim. App. 1976) (introduction of mug shot that showed front and side view of defendant and depicting a sign that read "SAN ANTONIO PD P7302316 10–22 73 7–15 AM" was reversible error). At the other end of the spectrum, it is also clear that when all marks identifying a picture as one taken by the police have been removed, the trial court does not err in admitting the photograph. *Huerta v. State*, 390 S.W.2d 770, 772 (Tex. Crim. App. 1965). The issue is whether the picture "implies a police record." *Johnson v. State*, 583 S.W.2d 399, 403 (Tex. Crim. App. 1979) (frontal and profile photographs that showed a chain around the defendant's neck admissible because they did not necessarily imply a police record).

*Araiza*, 929 S.W.2d at 555.

For example, in *Cervantes v. State*, the appellant's mug shot was considered properly admissible because the exhibit did not indicate that it was a mug shot: the appellant was facing forward; the photograph was cropped around his head and shoulders; he was wearing a collared shirt; the background was plain; and the exhibit contained no markings. *See Cervantes*, 2018 WL 6055439, at *7 (citing *Hollis v. State*, 219 S.W.3d 446, 466 (Tex. App.—Austin 2007, no pet.)).

Similarly, in *Huerta v. State*, any marks identifying a mug shot "were removed, and, as far as the jury were able to determine, it might have been taken in a penny arcade." *Huerta v. State*, 390 S.W.2d 770, 772 (Tex. Crim. App. 1965).

Even when a mug shot is from the case being tried, courts still prefer that all identifying marks be removed from the exhibit. *See Reyes v. State*, 579 S.W.2d 927, 928 (Tex. Crim. App.

1979); *Ware v. State*, 628 S.W.2d 249, 252 (Tex. App.—Fort Worth 1982, pet. ref'd). This is true even if the defendant is wearing "jail clothing" in his mug shot. *See Hollis*, 219 S.W.3d at 466.

But "if the mug shot was obtained from a prior offense rather than the present one, it is frequently inadmissible." *Id.* (citing *Alexander v. State*, 88 S.W.3d 772, 780–81 (Tex. App.—Corpus Christi 2002, pet. ref'd); *Green v. State*, 899 S.W.2d 245, 249 (Tex. App.—San Antonio 1995, no pet.)). "The typical concern in admitting a defendant's mug shot is whether it provides prejudicial evidence of an extraneous offense." *Id.*

In *Alexander v. State*, the court concluded that the mug shot impermissibly suggested other bad acts because, "even with the redactions, it appears only to be what it is, a mug shot." *Alexander*, 88 S.W.3d at 782. Likewise, in *Richardson v. State*, the court reversed and remanded after concluding that the appellant's mug shot was too clearly a mug shot, particularly with date information arranged across his chest, and "tended to show the commission of an extraneous offense." *Richardson*, 536 S.W.2d at 223. It did not matter that excising the date would strain the State's ability to establish when the photograph was taken. *See id.* "[A]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice." *Alexander*, 88 S.W.3d at 780 (citing TEX. R. EVID. 403).

The *Alexander* court considered the following *Wyatt* factors in concluding that the trial court abused its discretion by admitting the appellant's mug shot:

> (1) how compellingly the extraneous offense evidence serves to make a fact of consequence more or less probable—a factor which is related to the strength of the evidence presented by the proponent to show the defendant in fact committed the extraneous offense;

> (2) the potential the other offense evidence has to impress the jury "in some irrational but nevertheless indelible way;"

> (3) the time the proponent will need to develop the evidence, during which the jury will be distracted from consideration of the indicted offense;

(4) the force of the proponent's need for this evidence to prove a fact of consequence, i.e., does the proponent have other probative evidence available to him to help establish this fact, and is this fact related to an issue in dispute.

*Id.* at 777–78 (citing *Wyatt v. State*, 23 S.W.3d 18, 26 (Tex. Crim. App. 2000)); *accord Gigliobianco*, 179 S.W.3d at 140.

We now consider these factors to determine whether the State's mug shot exhibit was relevant and appropriate or whether it "tended to show the commission of an extraneous offense" and unfairly "infringed on [Hinojosa's] fundamental right to the presumption of innocence." *See Richardson*, 536 S.W.2d at 223.

**D.    Analysis**

*1.    Summary of Relevant Case Facts*

Hinojosa's identity as the shooter was never a disputed issue in this case. During opening statements, Defense Counsel referred to Hinojosa as the shooter. But, as the prosecutor argued, the State was still required to prove identity as an element. *See, e.g.*, *Roberson v. State*, 16 S.W.3d 156, 167 (Tex. App.—Austin 2000, pet. ref'd).

To establish Hinojosa's identity as the shooter, the prosecutor first showed surveillance video from Sugartime Lounge to Witness Joshua Garza and asked him to identify the shooter in the courtroom. Garza identified Hinojosa as the shooter. Garza testified that he had previously seen both Hinojosa and Torres at the bar and that he also recognized another witness in the video, Sam Monayan.

The next day, the prosecutor examined Monayan. Monayan knew Hinojosa as a family acquaintance and was also familiar with Torres from seeing him at the Sugartime Lounge. Monayan testified that he saw both Hinojosa and Torres at the Sugartime Lounge on the day of the shooting. He stated that he lent his lighter to Torres. A short time later, he heard several loud bangs and then discovered that Torres had been shot outside on the bar's patio. Monayan testified

that he performed CPR on Torres and that he saw Hinojosa's car drive away from the bar. He stated that he gave a statement at the police station a day or two later and that he was provided with a photograph of Hinojosa. He signed it, confirming that he knew it to be a photograph of Hinojosa.

When the prosecutor presented the signed photograph as an exhibit, Hinojosa objected to it as cumulative and suggestive, stating:

> Judge, here's the picture, but our objection is it's not—we stipulate that it was David who shot it. To put in a mug shot opens the door to extraneous conduct and the possibility of prior actions that can be inferred on the part of the jury. It's not—ID's not an issue, and it has zero probative value.[3]

The prosecutor responded, "Your Honor, it's not clear from the photograph that it is a mug shot. It's a black and white—you can't tell. And that is the photograph that he was presented. It looks like he could be just wearing a button-up and a T-shirt. It looks like a driver's license photograph to me."

Hinojosa reiterated that identity was not an issue, and the prosecutor responded that there was no written stipulation. The trial court asked whether the witness had not just identified Hinojosa, and the prosecutor responded that the witness described an out-of-court identification, "and a positive identification out of court comes first before an in-court." Hinojosa's objection was overruled, and the mug shot was admitted.

The mug shot exhibit contained a printed web address at the bottom of the page that read, "http://wppswebprod/Booking/Adult/2010/08/09/C73045700.JPG." In addition, the jury was aware that Hinojosa was not in custody for the Sugartime Lounge shooting when Monayan identified him to Detective Duke, meaning that Hinojosa had not been booked for the offense at

---

[3] This trial objection is sufficient to satisfy Texas Rule of Appellate Procedure 33.1. *See* TEX. R. APP. P. 33.1 (waiver).

issue, and the mug shot the State introduced was not from the instant case. The jury could have easily inferred that Hinojosa's mug shot was taken for a prior offense. *See Araiza*, 929 S.W.2d at 555 ("The issue is whether the picture 'implies a police record.'"). Therefore, we evaluate the prejudicial effect of Hinojosa's mug shot and weigh it against the mug shot's probative value. *See Alexander*, 88 S.W.3d at 780 (citing *Wyatt*, 23 S.W.3d at 26).

    2.    Wyatt *Factors*

        a.    <u>How compellingly did Hinojosa's mug shot serve to make a fact of consequence more or less probable</u>?

The assigned case detective, Detective Duke, showed Hinojosa's mug shot to Monayan to confirm Hinojosa's identity. But whether Monayan's confirmation to Detective Duke that he was looking for the correct suspect can be considered a fact of consequence is questionable. *See Lockhart v. State*, 847 S.W.2d 568, 575 (Tex. Crim. App. 1992) (Clinton, J., dissenting) (distinguishing context from fact of consequence). Normally, an out-of-court identification serves to establish that the in-court identification is reliable. *See Striblin*, 2019 WL 1049233, at *3. But here, the out-of-court identification was apparently conducted with a single photograph. *See Boyd*, 472 S.W.2d at 127 (condemning practice of showing single photograph to prosecution witness). This practice undercuts the reliability of the State's evidence as an out-of-court identification. *See id*.

Based on this record, we cannot conclude that it compellingly served to prove identity. *See Alexander*, 88 S.W.3d at 780. At best, it provided context for Detective Duke's investigation, which we distinguish from a fact of consequence. *See Lockhart*, 847 S.W.2d at 575 (Clinton, J., dissenting); *cf. Jones v. State*, 471 S.W.2d 413, 414 (Tex. Crim. App. 1971) ("The State may prove the circumstances surrounding [an] arrest."). This factor weighs against the State.

      b.      <u>The potential the other offense evidence has to impress the jury "in some irrational but nevertheless indelible way"</u>

Admitting the mug shot with the booking website address information suggested to the jury that Hinojosa had previously been arrested, which has "the potential to impress the jury in an irrational but nevertheless indelible way." *See Alexander*, 88 S.W.3d at 780. The mug shot provided prejudicial evidence of an extraneous offense and implied a police record. *See Cervantes v. State*, 2018 WL 6055439, at \*7; *Araiza*, 929 S.W.2d at 555. As argued by Hinojosa, suggesting a criminal background gives the jury a reason to question his judgment and not fully consider his self-defense argument, even if the jury rationally knows that Hinojosa's previous arrest should not inform the verdict in this case. This factor also weighs against the State.

      c.      <u>The time taken to develop the extraneous offense evidence, distracting the jury from consideration of the indicted offense</u>

The time spent proving up the mug shot was negligible and resulted in no great distraction of the jury's consideration of the indicted case. *See Alexander*, 88 S.W.3d at 780.

      d.      <u>The force of the proponent's need for this evidence to prove a fact of consequence</u>

We have questioned whether Hinojosa's mug shot served to prove a fact of consequence and reasoned that it predominately provided context for the detective's investigation. *See Lockhart*, 847 S.W.2d at 575 (Clinton, J., dissenting). Nevertheless, we address the State's need for Hinojosa's mug shot to prove identity. *See Alexander*, 88 S.W.3d at 780.

The mug shot was introduced through Monayan, a witness who was familiar with Hinojosa as a family acquaintance. Monayan's familiarity with Hinojosa spoke to the reliability of his in-court identification, and his familiarity was not scrutinized or questioned. Even if it were, Monayan was not the only witness to identify Hinojosa at trial.

The day before Monayan's testimony, Garza identified Hinojosa as the shooter in the surveillance video of the shooting. Then, after Monayan, a bartender from the Sugartime Lounge, Laura McGill, identified Hinojosa as the shooter in the surveillance video. McGill knew Hinojosa as a regular customer who always ordered Crown Royal Whisky and Coke.

During her testimony, the prosecutor attempted to introduce another copy of Hinojosa's mug shot, because Detective Duke had provided her with a copy of the same mug shot to sign. Hinojosa objected to the mug shot with McGill's signature as cumulative, and the objection was sustained. The prosecutor then asked McGill whether she had identified Hinojosa's photograph to Detective Duke and whether he was the same individual as the shooter in the surveillance video. She responded that she did, and that it was.

This same colloquy used to elicit contextual testimony about Detective Duke's investigation from McGill would have been appropriate for Monayan as well. Not only did the prosecutor have more than sufficient evidence to prove the uncontested element of identity, but the prosecutor did not need to introduce Hinojosa's mug shot with the booking URL in the exhibit's footer to prove that Detective Duke knew who his suspect was. This factor weighs against the State.

Based on our assessment of the *Wyatt* factors under Rule 403, we conclude that the prejudicial effect of Hinojosa's mug shot from a previous arrest clearly outweighed its probative value. *See id*. It was an abuse of discretion to admit the mug shot exhibit.

### 3. *Harm Analysis*

"Having found error, we must conduct a harm analysis to determine whether the error calls for reversal of the judgment." *See id.* at 778. Because the error is evidentiary, i.e., not constitutional, we will disregard it unless we determine that it has affected Hinojosa's substantial rights. *See id*. at 779 (citing TEX. R. APP. P. 44.2); *accord Ellison v. State*, 494 S.W.3d 316, 327

(Tex. App.—Eastland 2015, pet. ref'd). For our determination, we review the entire record for evidence that the error had a substantial and injurious effect or influence on the jury's verdict. *See Alexander*, 88 S.W.3d at 779; *Gigliobianco*, 179 S.W.3d at 145.

The jury's verdict turned on whether the jury believed that Hinojosa acted in self-defense when he shot Torres. *See* TEX. PENAL CODE ANN. § 9.31(a); *Tidmore v. State*, 976 S.W.2d 724, 728–30 (Tex. App.—Tyler 1998, pet. ref'd). The jury watched and had access to the surveillance video of the shooting; it heard testimony from an eyewitness; and it heard testimony from individuals at the bar who were familiar with Hinojosa and Torres and who witnessed the aftermath of the shooting.

The surveillance video is in color and offers a clear, well-lit view of the incident. But the quality of the video is pixelated and relatively distant, it provides no sound, and Hinojosa's back is to the camera when he shoots Torres. As a result, Hinojosa argued that the video failed to adequately capture Torres's potentially threatening gestures.

Hinojosa relied on McGill's testimony that Torres was known to instigate altercations when he drank alcohol and on the medical examiner's testimony that Torres's ocular fluid reflected a .306 vitreous alcohol concentration. Hinojosa also relied on witness testimony that Torres was "mean mugging" patrons at the bar when he walked in with his date. He argued that there were beer bottles on the picnic table where Torres was sitting with his date at the time of the shooting, and Torres could have used the bottle to assault him.

Torres's date, Ayanna Smith, was the eyewitness to the shooting. When she testified, she described a day of accompanying Torres from the bar to various drug deals and back to the bar again to drink, listen to music, and smoke cigarettes. Smith testified that she and Torres were not romantically involved but were coworkers at a call center and friends outside of work. Smith stated that she and Torres became acquainted with Hinojosa at the bar, and that Hinojosa

exchanged phone numbers with her and offered to be a methamphetamine contact for her. Surveillance video shows the three individuals sitting inside the bar, casually conversing—McGill testified that she heard the men engaging in some verbal one-upmanship. Surveillance video also shows them sitting outside at a picnic table together during the day. Smith explained that she and Torres spent some of their time inside the bar and then some of their time outside on the bar's patio to smoke because smoking was not allowed inside the bar.

The prosecutor asked Smith, "So, how is it that your friend [Torres] gets shot?" Smith responded, "[Hinojosa] shot him." The prosecutor attempted to follow up, but Smith did not elaborate:

> Q. And what's happening before [Hinojosa] shoots him?
>
> A. Y'all have the video.
>
> Q. And we're going to play it. I just want to know what—
>
> A. Thank you.
>
> Q. —you remember about it.
>
> A. Okay. Well, that's as far as it's going to get.
>
> Q. That's what you remember?
>
> A. I mean, all I can say is we were at the picnic table, and he shot him. What do you want me to say?

On cross-examination, Hinojosa asked Smith what she drank at the bar and whether she agreed that drugs and alcohol could have affected her perception. Smith stated that she drank four Fireball whisky drinks, and she agreed that drugs and alcohol could have affected her perception. She also stated that she "snuck a little bit" of methamphetamine in the bathroom after Hinojosa offered it to her.

Despite Smith's reluctance or inability to be more descriptive about the moments surrounding the shooting, the patio surveillance video from immediately before the shooting corroborates her testimony. The video shows an outside patio with a single picnic table in view. The camera's view is perpendicular to the table. Torres and Smith are the only two people at the table. Both are seated on the bench nearest the camera. They are seated about an arm's length apart, and both are facing in the direction of the camera. Both have their backs to the table. Torres is seated on Smith's left.

Torres stands up and walks around towards the other side of the table. While his back is towards the camera, he appears to take a bottle from the table with his left hand, transfer it to his right hand, and toss it to his right in a sideways motion, with the bottle moving off-camera. Torres then walks back around the table to the same side as Smith. He again sits on the table, facing the camera, to Smith's left. From this point, Torres remains seated on the table in the same position.

Hinojosa appears from off camera, approaching Torres from Torres's left. The two men shake hands. Hinojosa is standing with his back to the camera, facing Torres, and to Smith's left. Hinojosa is within arm's length of the bench. Then Hinojosa shifts his weight, and Torres slaps his own chest with his hands. Hinojosa ambles in front of Torres while Torres hunches and rests his hands on his knees. Hinojosa shifts his weight backward and forward, moving his head and his hands like he is saying something to Torres. Torres puts his hand on the beer bottle next to him on his right, and then tilts his head to the left, like he is spitting on the ground. Hinojosa moves his hand to his right hip, moving his shirt up. He lightly paces or rocks back and forth. While facing Torres, he repositions his body by turning his right side away from Torres, and he appears to put his left hand on Torres's left upper arm. Then Hinojosa moves his right hand from his right hip and points his hand at Torres. Torres slumps over and rolls to his right on the table,

where he then lies face down. Hinojosa turns and walks off the patio with what appears to be a gun in his right hand. Smith runs into the bar. Hinojosa's car can be seen driving away.

Reviewing the evidence as a whole, we conclude that it defeats Hinojosa's self-defense argument. *See Alexander*, 88 S.W.3d at 779. First, the surveillance video shows an exchange where Hinojosa maintains control through his body language and by standing in front of where Torres is seated. Next, there is no evidence of any threatening gestures by Torres; there is no evidence of any action by Torres for which deadly force would have been a reasonable and proportionate response. *See Tidmore*, 976 S.W.2d at 728. While we have recognized and articulated the danger in suggesting to the jury that Hinojosa had been previously arrested,[4] the jury benefited from the State's collection of evidence depicting and describing the shooting. The State's evidence weighed heavily against Hinojosa's argument that it might have been reasonable for him to shoot Torres, and it outweighed the prejudicial effect of the State's mug shot exhibit. S*ee Gigliobianco*, 179 S.W.3d at 145. We therefore conclude that Hinojosa's substantial rights were not affected, and we overrule his second point of error.

## CONCLUSION

Based on the above, we conclude that the trial court did not err by denying Hinojosa's request for a mistrial after the prosecutor made an improper argument. The improper argument was curable; the trial court took steps to remedy it; and there was no reasonable possibility that it contributed to the jury's verdict. Admitting Hinojosa's mug shot from a previous arrest was error because it suggested an extraneous offense. Nevertheless, the evidence against Hinojosa's self-

---

[4] *See Alexander v. State*, 88 S.W.3d 772, 781 (Tex. App.—Corpus Christi–Edinburg 2002, pet. ref'd).

defense argument outweighed the prejudicial effect of the mug shot, and Hinojosa's substantial rights were not affected. Therefore, the trial court's judgment is affirmed.

Patricia O. Alvarez, Justice

Do Not Publish